805 A.2d 499

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles F. HOLDER, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 2001.

Decided Aug. 22, 2002.

476

Jeanette D. Dickerson, Hatboro, for Charles F. Holder.

Patricia Eileen Coonahan, Norristown, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice NIGRO.

Appellant Charles F. Holder appeals from the Superior Court's order affirming his judgment of sentence for rape, simple assault, and aggravated assault. For the reasons that follow, we reverse and remand the matter to the Superior Court.

On August 1, 1998, Mary Wright reported to Hatboro police that Appellant had raped her in her apartment. Appellant was subsequently arrested and charged with rape, simple assault, aggravated assault, aggravated indecent assault, indecent assault, reckless endangerment, and harassment. In light of the fact that Appellant was on probation for a prior criminal conviction, he was sent to prison awaiting a probation revocation hearing, i.e., a Gagnon hearing. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

During his Gagnon hearing on November 17, 1998, Appellant tried to introduce evidence of a prior false rape allegation by Wright. Specifically, Appellant wanted to offer evidence that a week prior to this incident, after a night of drinking, Wright awoke in the middle of the night and asked Michael Hunter, "Did you rape me last night?" Appellant intimated that he wanted to use Wright's prior rape allegation to discredit her testimony that she trusted Appellant because he was Hunter's friend, by showing that she actually did not even trust Hunter. The Gagnon hearing judge, Judge William Carpenter, ruled that this evidence was inadmissible, citing the rape shield law and hearsay rules. Judge Carpenter subsequently revoked Appellant's probation.

After Appellant's trial for the rape and assault of Wright was scheduled, Appellant filed a pretrial motion in limine on April 12, 1999, seeking a preliminary ruling on the admissibility of certain evidence in his upcoming trial. Specifically, Appellant asked the trial court to allow him to admit the same

evidence that Judge Carpenter had previously excluded at the Gagnon hearing, i.e., Wright's previous allegation that Hunter had raped her. On December 28, 1999, the trial judge, Judge Paul Tressler, issued an order stating that Judge Carpenter's earlier ruling precluded a contradictory ruling and, therefore, that Appellant was collaterally estopped from relitigating the identical issue during trial.

On March 24, 2000, a jury found Appellant guilty of rape, simple assault, and aggravated assault.[1] The trial court sentenced him to a term of eight years and six months to twenty years in prison for the rape conviction, and to a concurrent term of six to twelve years in prison for the aggravated assault conviction. These sentences were to be served consecutive to the sentence Appellant was then serving for violating his probation.

On appeal to the Superior Court, Appellant argued that the trial court erred in denying Appellant's motion to allow the admission of Wright's prior rape allegation into evidence. *See Commonwealth v. Holder*, 765 A.2d 1156 (Pa.Super.2001). The Superior Court concluded that Appellant's claim essentially challenged the trial court's decision that Judge Carpenter's ruling on the admissibility of Wright's prior rape allegation at the Gagnon hearing collaterally estopped the trial court from ruling on the issue. *Id.* at 1159. In reviewing this claim, the Superior Court determined that the Gagnon hearing judge and the trial judge were of equal jurisdiction and that the issue regarding the admissibility of Wright's prior rape allegation had been finally litigated at Appellant's Gagnon hearing. *Id.* at 1160. Accordingly, the Superior Court held that the trial court had properly ruled that it was collaterally estopped from ruling on the evidentiary issue, and the Superior Court affirmed Appellant's judgment of sentence. *Id.*

Appellant filed a Petition for Allowance of Appeal to this Court. We granted allocatur to determine whether the trial court properly ruled that Wright's prior rape allegation was inadmissible because Appellant was collaterally estopped from

1. 18 Pa.C.S. §§ 2701, 2702, & 3121, respectively.

relitigating that issue, and if collateral estoppel was in fact properly applied, whether the Superior Court erred in failing to review the evidentiary ruling on its merits.[2] For the reasons that follow, we hold that the trial court properly applied collateral estoppel, but that the Superior Court did err in failing to review the evidentiary ruling on its merits.

 The doctrine of collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy, which was made applicable to the states through the Fourteenth Amendment. *See Ashe v. Swenson*, 397 U.S. 436, 437, 90 S.Ct. 1189, 1191, 25 L.Ed.2d 469 (1970) (citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)); *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371, 1372 (1983). The phrase "collateral estoppel," also known as "issue preclusion," simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit.[3,4] *Ashe*, 397 U.S. at 443, 90 S.Ct.

**2.** Given that the instant appeal presents this Court with a pure legal question, our scope of review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

**3.** Although collateral estoppel is but one aspect of the concept of res judicata, in modern usage the two terms have distinct meanings. See *McNeil v. Owens–Corning Fiberglas Corp.*, 545 Pa. 209, 680 A.2d 1145, 1148 n. 2 (1996). Collateral estoppel is defined as "issue preclusion" and it prevents relitigation of particular issues, whereas res judicata is defined as "claim preclusion" and it prevents relitigation of entire causes of action. See RESTATEMENT (SECOND) OF JUDGMENTS, § 27 (1982); *Black's Law Dictionary* 1306 (6th ed.1990). Here, the phrase "collateral estoppel" is the applicable term, because although the evidentiary issues litigated in both Appellant's Gagnon hearing and his criminal trial were identical, the causes of action in each proceeding were clearly different.

**4.** Other jurisdictions have stated that even a determination of "ultimate fact," i.e., the application of law to fact, will not be conclusive in a later action if it only constitutes an "evidentiary fact" in that action. *See* RESTATEMENT (SECOND) OF JUDGMENTS, § 27 cmt. j. Such a formulation is occasionally used to support a refusal to apply collateral estoppel where the refusal could more appropriately be based on dissimilarity between the issues in the two proceedings. *Id.* However, because the line between ultimate and evidentiary facts is often impossible to draw, in *Commonwealth v. Hude*, this Court refused to sanction such a formalistic distinction between the two phrases. 492 Pa. 600, 425 A.2d 313, 321 n. 6 (1980) (plurality opinion).

at 1194; *see* RESTATEMENT (SECOND) OF JUDGMENTS, § 27 cmt. c (1982). Collateral estoppel does not automatically bar a subsequent prosecution, but rather, it bars redetermination in a second prosecution of those issues *necessarily* determined between the parties in a first proceeding that has become a final judgment. *Commonwealth v. Smith,* 518 Pa. 15, 540 A.2d 246, 251 (1988) (emphasis in original).

Traditionally, Pennsylvania courts have applied the collateral estoppel doctrine only if the following threshold requirements are met: 1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; 2) the issue was actually litigated in the first action; and 3) a final judgment on the specific issue in question was issued in the first action.[5] *See id.; Clark v. Troutman,* 509 Pa. 336, 502 A.2d 137, 139 (1985); *Commonwealth v. Hude,* 492 Pa. 600, 425 A.2d 313, 320 (1980) (plurality opinion). An issue is actually litigated when it is properly raised, submitted for determination, and then actually determined. RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. d. For collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect. *Id.* § 13 cmt. g.

Applying the threshold requirements to the instant case, it is clear that the lower courts properly determined that collateral estoppel applies. First, the issues in the two actions were sufficiently similar. At both the Gagnon hearing and the criminal trial, Appellant sought to admit the same evidence of Wright's prior rape allegation. Moreover, the admissibility of the prior rape allegation was sufficiently material given that Appellant sought to introduce the evidence as a means of

5. This test was derived from the federal decisions applying the *Ashe* standard. *See, e.g., United States v. Sarno,* 596 F.2d 404, 408 (9th Cir.1979); *United States v. Hernandez,* 572 F.2d 218, 220 (9th Cir.1978). In *Hude,* this Court concluded that Article 1, section 10 of the Pennsylvania Constitution is essentially identical to the federal double jeopardy clause and should be interpreted at least coextensively with its federal counterpart. *Hude,* 425 A.2d at 320; *see also Commonwealth v. Klobuchir,* 486 Pa. 241, 405 A.2d 881, 887 & n. 12 (1979) (Nix, J., Opinion in Support of Affirmance, joined by O'Brien & Larsen, JJ.).

impeaching Wright's testimony, which in both proceedings was the sole evidentiary basis presented by the Commonwealth to prove the rape and assault. Furthermore, the record firmly establishes that the issue of the admissibility of Wright's prior rape allegation was actually and finally litigated before Judge Carpenter, who after a full hearing precluded Appellant from admitting any evidence of the allegation. Accordingly, we agree with the lower courts that all three of the threshold requirements were met.

Appellant argues, however, that collateral estoppel should not apply in a criminal trial subsequent to a Gagnon hearing, regardless of whether the threshold requirements have been satisfied.[6] He asserts that probation revocation hearings and criminal trials have certain procedural dissimilarities, which would be unfairly concealed by the hypertechnical application of collateral estoppel. Appellant notes that during a criminal trial, the defendant is afforded a presumption of innocence and the prosecution bears the strong burden of proving its case "beyond a reasonable doubt," whereas in a Gagnon hearing, the prosecution's burden has been reduced to a mere "preponderance of the evidence." *See Brown,* 469 A.2d at 1373–74. Thus, Appellant argues that applying an interlocutory ruling in a Gagnon hearing to a subsequent criminal trial lessens the prosecution's burden at trial by not forcing the prosecution to prove every element of its case beyond a reasonable doubt. Appellant also asserts that the ultimate issues that the court must determine in Gagnon hearings and criminal trials are distinct. Appellant essentially argues that in a criminal trial, the issue is whether the defendant is guilty of the crime charged, whereas in a probation violation hearing the focus is on whether the conduct of the probationer indicates that probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antiso-

6. This Court has previously looked to the public policies in favor of or against the application of collateral estoppel before determining whether or not it should be applied in a particular setting. *See, e.g., Commonwealth v. Lagana,* 510 Pa. 477, 509 A.2d 863, 865 (1986); *Brown,* 469 A.2d at 1375–78.

cial conduct. *See Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701, 708 (1973).

 Clearly, Appellant is correct that there are articulable differences between probation revocation hearings and criminal trials. Probation, like parole, is not part of the criminal prosecution, and thus the full panoply of rights due a defendant in a criminal trial does not apply to probation revocation. *See Gagnon*, 411 U.S. at 781, 93 S.Ct. at 1759. Probation is a suspended sentence of incarceration served upon such terms and conditions as imposed by the sentencing court. *Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179, 1184 (1979). Probation revocation requires a truncated hearing by the sentencing court to determine whether probation remains rehabilitative and continues to deter future antisocial conduct. *See* 3 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 26.6(b), at 261 (1984). Such a hearing takes place without a jury, with a lower burden of proof, and with fewer due process protections.[7] *See id.; also Commonwealth v. Marchesano*, 519 Pa. 1, 544 A.2d 1333, 1336 (1988) (procedural rules less important at Gagnon hearing). Conversely, the criminal trial, the culmination of the criminal prosecution, is a bastion of constitutional protections, fortified with procedural and substantive due process.

Despite these differences, this Court has previously rejected the argument that the procedural distinctions between a Gagnon hearing and a criminal trial preclude the application of collateral estoppel. *See Brown*, 469 A.2d at 1377–78. In *Brown*, the Commonwealth instituted probation revocation

7. In a probation revocation hearing, under the procedural requirements of due process, the probationer is entitled to: 1) written notice of the claimed violations of his probation; 2) disclosure of the evidence against him; 3) an opportunity to be heard in person and to present witnesses and documentary evidence; 4) a neutral hearing body; 5) a written statement by the fact-finder as to the evidence relied on and the reasons for revoking probation; and 6) cross-examination of adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation. *Black v. Romano*, 471 U.S. 606, 611–12, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985). The probationer, however, is not entitled to strict application of the rules of evidence or procedure, including the Fourth and Fifth Amendment exclusionary rules. *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701, 710 (1973).

proceedings based on charges of which the defendant had been acquitted.[8] The Commonwealth argued, as Appellant argues here, that because the objectives sought to be achieved in a probation revocation hearing are different from those sought to be attained in a trial of the substantive offense, collateral estoppel should not apply, even if both proceedings share issues of law or fact. This Court disagreed, stating that "[i]n both proceedings the sanction of loss of liberty is involved . . . [and w]here, as here, the sole basis offered for the violation of probation is the commission of a subsequent offense, the threshold issue in both proceedings is exactly the same, i.e., did the probationer commit the offense." *Id.* at 1376. We also stated that although probation and the criminal trial are different on many levels, including requiring different burdens of proof, they are both components of the same system, and the suggestion "that the policies of one segment seek a purpose inimical to the policies of the others misconstrues the relationship of the various components themselves." *Id.* at 1377. The Court therefore held that the Gagnon hearing judge was collaterally estopped from revoking the defendant's probation based on charges of which he had been acquitted.[9] *Id.* at 1377–78.

8. In *Brown,* the Commonwealth elected to defer the probation revocation decision pending completion of the trial on the new charges, whereas in the instant case, Appellant's probation was revoked, and he subsequently proceeded to trial in the criminal case. "[E]ven where the Commonwealth chooses to assert actual criminal behavior as the basis of the revocation, it may do so in a revocation proceeding prior to the criminal trial and thereby avoid the reasonable doubt burden of proof." *Brown,* 469 A.2d at 1377; *see also Kates,* 305 A.2d at 706. Further, because of the differences between trials and probation revocation proceedings, it is not a violation of a defendant's constitutional rights for revocation of probation to take place after arrest, but before trial. *See Commonwealth v. Tomczak,* 252 Pa.Super. 114, 381 A.2d 140, 142 (1977). Moreover, even if the probationer is later acquitted of the criminal charges, the factual support for the earlier probation revocation is not necessarily removed, and the revocation may still stand. *Id.*

9. Other jurisdictions have split on this issue. *Compare, e.g., Lucido v. Superior Court,* 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223 (1990) (collateral estoppel does not apply in a criminal trial subsequent to a probation revocation hearing), *with, e.g., People v. Kondo,* 51 Ill.App.3d 874, 9 Ill.Dec. 479, 366 N.E.2d 990 (1977) (collateral estoppel precludes relitigation in prosecution of issue determined in a prior proba-

Although we acknowledge the various dissimilarities between Gagnon hearings and criminal trials, we reaffirm our conclusion in *Brown* that the similarities hold greater weight in this context. At the heart of both proceedings are the same overarching policies, and both proceedings contemplate the same substantive issue, i.e., did the defendant commit the offense charged. Thus, we hold that the lower courts in the instant case properly determined that collateral estoppel barred relitigation of the evidentiary issue in Appellant's criminal trial after the identical issue was litigated at his Gagnon hearing.[10]

■ Appellant further argues that even if collateral estoppel was properly applied, the Superior Court erred in failing to review the evidentiary ruling on its merits.[11] Although

tion revocation hearing), and *State v. Bradley*, 51 Or.App. 569, 626 P.2d 403 (Or.App.1981) (same), *and Ex parte Tarver*, 725 S.W.2d 195 (Tex. Crim.App.1986) (same).

**10.** We note that the United States Supreme Court has yet to determine whether it is constitutional to apply offensive collateral estoppel, i.e., collateral estoppel applied against the accused, in a criminal matter, and the circuit courts that have considered this issue have split in their resolution of it. *Compare, e.g., United States v. Pelullo*, 14 F.3d 881, 896 (3d Cir.1994) (collateral estoppel cannot be applied against a criminal defendant to establish an element of a crime), and *United States v. Harnage*, 976 F.2d 633, 634 (11th Cir.1992) (collateral estoppel cannot be applied against a criminal defendant generally), *with, e.g., Hernandez–Uribe v. United States*, 515 F.2d 20, 21–22 (8th Cir.1975) (collateral estoppel applied against a criminal defendant does not infringe on right to jury trial), and *United States v. Colacurcio*, 514 F.2d 1, 6–7 (9th Cir.1975) (same). While we clearly recognize the importance of this issue, we are unable to reach it in the instant matter as Appellant has failed to properly present the issue to this Court.

**11.** The Commonwealth argues that Appellant waived this claim by not including it in his concise statement of matters complained of, pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. *See Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998) (issues not raised in 1925(b) statement deemed waived). Appellant's 1925(b) statement included the following issue:

The Trial Court erred when it denied the defendant's motion to present evidence of a similar prior rape allegation leveled by the alleged victim.

App't Concise State. ¶ 5 (Apr. 12, 2000). As the Superior Court noted, the issue cited above stems from the trial court's decision that Judge Carpenter's ruling at Appellant's Gagnon hearing collaterally estopped the trial court from determining whether Wright's prior rape allegation

Appellant did not appeal the Gagnon hearing judge's adverse evidentiary ruling after the Gagnon hearing, he argues that due process requires that the Superior Court still review the propriety of that decision. Appellant bases this argument on our holding in *Commonwealth v. Lagana,* 510 Pa. 477, 509 A.2d 863 (1986).

In *Lagana,* the defendant was charged with a firearm violation and burglary. Although both charges stemmed from the same criminal episode, the Commonwealth chose not to consolidate the matters, and they proceeded through the system separately. Consequently, defense counsel filed a separate motion to suppress in each of the two matters. At the first suppression hearing, held on the burglary matter, Judge Nelson Diaz suppressed certain physical evidence on the basis that the defendant had been arrested without probable cause. The Commonwealth chose not to appeal, electing instead to *nolle pros* the burglary charge. At the second suppression hearing, held on the firearms matter, Judge Eugene H. Clarke, Jr., ruled that by operation of collateral estoppel, Judge Diaz's findings of fact and conclusions of law were binding on the defendant in the second prosecution. As a result, Judge Clarke suppressed the physical evidence.

On appeal, the Superior Court affirmed, and this Court granted allocatur to determine whether collateral estoppel applies to pretrial suppression rulings where separate prosecutions arise from a single arrest. We reversed, finding that "some limited form of collateral estoppel" was necessary to "discourage relitigation of the same issues based upon the same evidence, while at the same time preventing judges of equal jurisdiction from entering diverse rulings on the same evidence." *Id.* at 866.[12] We instructed, however, that "the

was admissible at trial. A logical extension of whether collateral estoppel applied in this case is how that doctrine should have been applied. Thus, the issue of whether the Superior Court erred in failing to review the evidentiary ruling on its merits is properly before this Court.

12. In doing so, we rejected the approach of our sister states that have held that collateral estoppel only applies if jeopardy attaches and have thus declined to apply collateral estoppel to pretrial suppression orders.

ruling of the first suppression hearing [must be] incorporated into the record of the second hearing . . . to allow [appellate] review of the first decision . . . as if it had been entered anew" in the second hearing. *Id.* Specifically, we stated that:

> in those instances where two prosecutions arise out of a single search and/or seizure, a decision by a suppression court during the first prosecution can, upon the motion of the previous prevailing party, become part of the second prosecution. The party against whom this decision is being offered may offer any new evidence [that] was previously unavailable. *See generally* Pa.R.Crim.P. 323(j). Absent such new evidence the suppression judge in the second prosecution must adopt the findings and conclusions of the first judge, and incorporate them into the record. Thereupon, the party against whom the first decision is offered may have the validity of the decision reviewed on appeal.

*Id.* We further observed that:

> [s]ince the ruling of one judge becomes the core of another judge's decision it is in the best interest of all concerned that the party against whom it is offered have the matter open for appellate review. Additionally, . . . we see no reason why a party who has exercised discretion in refusing to appeal a suppression ruling should be bound in a subsequent proceeding . . . .

*Id.* at 867.

Although our holding in *Lagana* involved a suppression hearing prior to a criminal trial, the analysis we employed applies equally to the situation here, i.e., a criminal trial following a Gagnon hearing. Like the appellant in *Lagana*, Appellant has received *no* appellate review of the probation revocation judge's evidentiary ruling, which was subsequently applied to his criminal prosecution.[13] Although following his

---

*See, e.g., State v. McCord,* 402 So.2d 1147 (Fla.1981); *State v. Doucet,* 359 So.2d 1239 (La.1977); *State v. Gonzalez,* 75 N.J. 181, 380 A.2d 1128 (1977).

**13.** In the instant case, the Superior Court merely stated the following regarding Judge Carpenter's decision that the evidence was inadmissible:

Gagnon hearing Appellant chose not to appeal the evidentiary ruling, *Lagana* makes it clear that Appellant should not be penalized for making such a decision. Thus, we agree with Appellant that he is entitled to have the validity of the evidentiary ruling reviewed on appeal, *see generally Lagana*, 510 Pa. 477, 509 A.2d 863, and the matter is remanded to the Superior Court for that purpose. Given that the trial court adopted the Gagnon hearing judge's ruling and incorporated it into the record, the Superior Court must, on remand, review that decision as if it had been made during the criminal trial.[14]

The order of the Superior Court is reversed and the matter is remanded to that court.[15] Jurisdiction relinquished.

Former Chief Justice FLAHERTY did not participate in the consideration or decision of this case.

> Both the judge at the Gagnon hearing and the judge at the criminal trial were bound by rules of the Rape Shield Law. They were judges of equal jurisdiction, and the same issue had been finally litigated at the earlier hearing. As such, the trial court was collaterally estopped and did not err by refusing to rehear the issue.
>
> *Holder*, 765 A.2d at 1160. Thus, we agree with Appellant that the Superior Court clearly did not review the merits of the evidentiary ruling.

14. We realize that our use of the term "collateral estoppel" in the criminal context is somewhat different from how it has been historically defined. Traditionally, a conclusion that collateral estoppel applies precludes any court, either trial or appellate, from reviewing the contested issue. Within the criminal context, however, this Court has avoided such a severe approach and has instead employed the "limited form of collateral estoppel" that provides for appellate review of the issue. *See Lagana*, 509 A.2d at 866.

15. An independent review of the record reveals that Appellant's Gagnon hearing was held over the defense's objection to continue the matter pending resolution of the criminal case on the substantive charges. During a hearing on the pending motion in limine, Appellant argued that he was not given the opportunity at the Gagnon hearing to fully research and articulate his arguments regarding the rape shield issue. Appellant states that "Judge Carpenter made his ruling under Rules 607, 608, and 404 [of the Pennsylvania Rules of Evidence], whereas the evidence was properly offered under Rule 613," the rule for the admissibility of prior inconsistent statements. *See* Hrg. Tr. 3:24–5:8 (Dec. 7, 1999). The issue of whether the rape shield statute was properly applied to this factual context, however, is a matter for the Superior Court to review on remand.

Chief Justice ZAPPALA concurs in the result.

Justice SAYLOR files a concurring and dissenting opinion in which Justice CASTILLE and Justice NEWMAN join.

Justice SAYLOR, Concurring and Dissenting.

The lead opinion focuses on the narrower of two questions presented by this appeal, namely, the general applicability of collateral estoppel at a criminal trial with respect to an evidentiary matter previously resolved at a probation revocation hearing. The case, however, presents a broader and more substantial question of public policy: whether the Commonwealth should ever be authorized to invoke the doctrine of collateral estoppel offensively to preclude relitigation of issues by an accused in a criminal trial. The decisions primarily relied upon by the lead are largely of tangential relevance to this question, since each involves the defensive use of issue preclusion by an accused against the Commonwealth, *see* *Commonwealth v. Lagana*, 510 Pa. 477, 480–81, 509 A.2d 863, 864–65 (1986); *Commonwealth v. Brown*, 503 Pa. 514, 517–18, 469 A.2d 1371, 1372–73 (Pa.1983), an application that is more commonly sanctioned and, in some circumstances, mandated in the criminal setting.[1] Moreover, Appellant's single-page argument, at best, touches only obtusely on the broader controversy, providing the Court with little meaningful assistance in identifying and weighing the competing public policy concerns involved.[2] Most significantly, as the lead opinion recognizes, Appellant fails to reference the substantial constitutional considerations that have caused some courts to disapprove this

1. *See generally Brown*, 503 Pa. at 517–18, 469 A.2d at 1372–73 (explaining the required application of issue preclusion, rooted in the Fifth Amendment's guarantee against double jeopardy, as concerns issues of ultimate fact decided favorably to an accused via a valid and final judgment citing *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)).

2. Appellant offers a single citation to *Commonwealth v. Cosgrove*, 427 Pa.Super. 553, 629 A.2d 1007 (1993), for the general proposition that a defendant, who has been found to be in violation of probation on account of his commission of a subsequent criminal offense, is nevertheless entitled to a trial in which he is presumed innocent of the charges.

particular attempted application of issue preclusion. *See* Opinion Announcing the Judgment of the Court, *op.* at 9 n. 10 (citing cases). As such considerations are integrally intertwined with salient public policies, in my judgment, the lead opinion's determination that Appellant has failed to raise them renders this appeal an unsuitable vehicle in which to sanction the government's use of offensive collateral estoppel in a criminal case.

As the lead opinion does not expressly weigh the public policies involved in the context of the broader issue, I am unable to join its approval of offensive collateral estoppel in this criminal matter. In this regard, I note that courts which have disapproved such application of the doctrine have generally concluded that a criminal defendant's constitutionally protected liberty interests outweigh the concerns of efficiency and finality that are typically invoked to support application of issue preclusion in the civil context. *See, e.g., United States v. Pelullo,* 14 F.3d 881, 893 (3d Cir.1994) ("It is widely recognized that 'in criminal cases, finality and conservation of private, public, and judicial resources are lesser values than in civil litigation' ");[3] *see also United States v. Gallardo–Mendez,* 150 F.3d 1240, 1244 (10th Cir.1998) ("As the Court of Appeals for the Third Circuit has well illustrated, [the] interest of the accused to vindicate himself in a criminal case has been held to trump a variety of 'public interest concerns ... of the highest magnitude' " (citation omitted)); *State v. Rodriguez,* 11 S.W.3d 314, 322 (Tex.Ct.App.1999) ("The efficiency concerns that drive the collateral estoppel policy on the civil side are not nearly as important in criminal cases because criminal cases involve a public interest in the accuracy and justice of criminal results that outweighs the economy concerns that undergird the estoppel doctrine." (citations omitted)).

I also am troubled by the lead's decision to substantially adjust the usual rules of appealability to ameliorate shortcom-

---

3. In *Pelullo,* the Third Circuit also explained that there is little historical justification for application of collateral estoppel against a criminal defendant. *See Pelullo,* 14 F.3d at 893–94.

ings of the application of offensive collateral estoppel in this setting. Such departures frequently have consequences that may not be anticipated, not the least of which is the generation of additional litigation to determine the boundaries of the exception that is developed to address the particular situation at hand. This, of course, might be avoided if the issue were to be decided in a case in which a broader range of core concepts could be explored in the first instance. I also question whether it is truly best to preclude a trial court from considering the merits of a prior evidentiary ruling which has not been challenged on appeal in the context of a subsequent criminal trial, while then requiring the appellate courts to do just that. This would seem to have countervailing effects in terms of efficiency and finality that should be considered in their own right. Additional abstractions and incongruities are presented by the focus on the unappealed decision rendered in the prior case rather than upon a present determination of the court whose rulings are directly under consideration in the appeal. Finally, I am not certain that the distinction between evidentiary and ultimate fact drawn by many courts in assessing the application of issue preclusion should be summarily dismissed based on the truncated treatment of the question given by a plurality of Justices in *Commonwealth v. Hude*, 492 Pa. 600, 614–15 & n. 6, 425 A.2d 313, 321 & n. 6 (1980). *See* Majority Opinion, at 502 n. 4.

Since I do not support the application of collateral estoppel in this case on the terms provided by the lead opinion, I would craft the remand to direct the Superior Court to consider whether the trial court's application of collateral estoppel constituted harmless error, which would entail evaluation of the applicability of the Rape Shield Law to Appellant's evidence concerning other alleged incidents involving the victim.

Justice CASTILLE and Justice NEWMAN join this concurring and dissenting opinion.