**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 14-1382**

---

GRAYSON L. HARE, JR.,

             Plaintiff - Appellant,

      v.

SHIRLEY J. SIMPSON; BARBARA A. BURNS; PAULINE E. GIMA;
GILBERT G. MALONE; DOES 1-10,

             Defendants - Appellees.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   J.  Frederick Motz, Senior District
Judge.  (1:13-cv-01981-JFM)

---

Argued:  March 26, 2015                Decided:  August 7, 2015

---

Before GREGORY, KEENAN, and WYNN, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by unpublished
opinion.  Judge Gregory wrote the opinion, in which Judge Keenan
and Judge Wynn joined.

---

**ARGUED**:  K. Ross Powell, UNIVERSITY OF VIRGINIA SCHOOL OF LAW,
Charlottesville,  Virginia,  for  Appellant.    Leo  Wallace,
Stewartstown, Pennsylvania; Russell Karpook, COHAN, WEST &
KARPOOK, PC, Baltimore, Maryland, for Appellees.  **ON BRIEF**:
Stephen L. Braga, Brian Walsh, Third Year Law Student, Appellate
Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW,
Charlottesville, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Grayson Hare, Jr., a pro se Maryland litigant, has sued four Pennsylvania residents for forgery, aiding and abetting fraud, intentional infliction of emotional distress, and civil conspiracy. Defendants-Appellees are Hare's step-sister, Shirley Simpson; Simpson's attorney, Gilbert Malone; Malone's paralegal, Pauline Gima; and Simpson's real estate broker, Barbara Burns. Essentially, Hare alleges that Appellees conspired to produce counterfeit powers of attorney for Hare's parents, which Simpson used to confine Hare's father to a nursing home, to restrict communication between the two, and to liquidate property without giving Hare his share. The district court dismissed the case on res judicata grounds. For the reasons that follow, we affirm dismissal of the claims against Burns and Gima from the case, as well as Hare's claims against all Appellees for intentional infliction of emotional distress. However, we reverse the district court's determination that res judicata bars Hare's remaining claims against Simpson and Malone and remand the case for further proceedings consistent with this opinion.

I.

Hare's first amended complaint ("complaint") alleges that in 2006, shortly after their mother suffered a stroke, Simpson

3

left Hare's father in his Maryland home without adequate care before subsequently admitting him to a nursing home in Pennsylvania. According to Hare, Simpson was able to use her personal relationships with the facility's leadership to restrict Hare's communication with and access to his father, including in one instance having Hare removed from the property.

Hare further alleges that around this same time, Appellees conspired to produce counterfeit powers of attorney for both parents back-dated to 2002.[1] Hare maintains that Simpson had existing relationships with Malone and Gima, who together created the fraudulent documents. Armed with the counterfeit powers of attorney, Hare alleges that in 2007, Simpson worked with Burns to sell the parents' residence without their knowledge or consent. Hare claims that he is entitled to half of these proceeds pursuant to a 1995 deed conveying the property to him and Simpson as tenants in common.[2]

Hare says he became aware of this conspiracy in 2010, two years after his parents passed away. After his parents' death,

---

[1] The complaint also alleges that Malone created fraudulent estate planning documents. See J.A. 17. This allegation does not appear related to the primary relief that Hare seeks, which is his half of the 1995-deeded property that was sold in 2007. See J.A. 20.

[2] The deed was executed but not recorded by Hare and Simpson's parents, who also reserved a life estate and the continuing power to sell the property during their lifetime.

4

Simpson was appointed personal representative of their estate on November 3, 2008. Simpson avers that it was only in discharging these duties that she discovered the 1995 deed. In January 2009, Simpson filed an action in Baltimore County Circuit Court in her capacity as representative of the estate seeking a declaratory judgment on the validity of the deed. Hare filed a counter-complaint alleging that the deed was valid, that Simpson had breached her duties to the Hares and to the estate, and also requesting an accounting of her actions in that capacity. Hare v. Simpson, No. 1385, at *3-4 (Md. Ct. Spec. App. Apr. 15, 2014). After a hearing on both parties' motions for partial summary judgment, the court declared the deed valid. Id. at *4. All other remaining issues from Hare's counter-complaint were reserved for trial on July 26, 2010, but the trial was continued until July 26, 2012. Id. at *4-5.

In the years between when the Baltimore action was initiated and when the trial took place, Hare pursued litigation in Pennsylvania. He filed a will contest in the Court of Common Pleas of York County, Pennsylvania Orphans' Court, along with a petition for accounting. Simpson filed her formal accounting on September 13, 2011, and Hare his objections on October 18, 2011. On October 19, 2011, the Pennsylvania court dismissed Hare's objections and affirmed the accounting, writing in its one-page adjudication that: "Grayson L. Hare, Sr. executed a Power of

5

Attorney in favor of Shirley J. Simpson July 26, 2002." J.A. 36. On June 26, 2012, the Baltimore action came back before the circuit court. Ruling on Hare's counter-complaint, the court decided in pertinent part that the issues had been previously litigated and brought to final judgment in Pennsylvania. Hare, No. 1385, at *5-6.

Hare next pursued relief in federal court, first attempting to bring suit against Appellees in federal district court in California, which was dismissed for lack of personal jurisdiction over the defendants. Hare then filed his complaint in this case on July 9, 2013. Less than a year later, on April 15, 2014, the Maryland Court of Special Appeals affirmed the decision of the Baltimore County Circuit Court based on claim preclusion, in part because Simpson appeared in the same representative capacity in the Pennsylvania and Maryland actions. Hare, No. 1385, at *7-12.

Hare's federal complaint contains four counts: forgery, aiding and abetting fraud, intentional infliction of emotional distress, and civil conspiracy. Burns moved to dismiss the case, and Simpson, Malone, and Gima filed a separate motion to dismiss. The district court ruled in favor of Appellees, holding without further explanation "that the claims asserted by plaintiff are barred by the doctrine of res judicata since they were resolved in litigation in the Court of Common Pleas of York

6

County, Pennsylvania Orphans' Court." J.A. 138. Hare now timely appeals from this decision.

## II.

We review a grant of a motion to dismiss for failure to state a claim de novo. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011). In assessing the propriety of a Rule 12(b)(6) ruling, we accept the factual allegations in the complaint as true and may also properly take judicial notice of matters of public record. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). The complaint's factual allegations, however, "'must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).

## A.

We must at the outset affirm the dismissal of the claims against Burns and Gima. While the district court ostensibly relied on claim preclusion, see infra, we may affirm its decision on any grounds apparent from the record. United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005). Here, Hare has simply failed to plead a set of facts supporting any claim for relief against either of these Appellees. Burns is twice-

7

mentioned in the complaint, first as having listed Hare's parents' residence for sale "in furtherance of the objectives of the conspiracy." J.A. 14. Hare further accuses Burns of having "concealed the existence of the unrecorded 1995 deed from the purchaser of the Hares' residence." J.A. 15 (emphasis added). Even less detail is provided about Gima's alleged role; Hare merely asserts she "assisted in the production of fraudulent powers of attorney." J.A. 13. A well-pled complaint must offer more than "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (brackets and internal quotation marks omitted). Without more detail alleging a plausible claim for relief, we find these fleeting mentions of Burns and Gima insufficient to state a claim against them as a matter of law.

B.

We also find that Hare has failed to state a claim for intentional infliction of emotional distress (IIED). The complaint states that "physical and emotional damage" was "directly caused by . . . prevent[ing] plaintiff from having free and unmonitored communications with his father and by denying plaintiff medical information concerning his father's condition and treatment." J.A. 18. This count appears to allege harm inflicted on Hare either while he was in Pennsylvania or California. See J.A. 14; see also J.A. 65-67.

8

Under the rule of lex loci delicti, Hare's IIED claim is therefore evaluated under the substantive tort law of those states. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Hauch v. Connor, 453 A.2d 1207, 1209 (Md. 1983) (affirming that Maryland "adhere[s] to the rule that the substantive tort law of the state where the wrong occurs governs"). But regardless of whether the alleged harm occurred in Pennsylvania, California, or both, Hare's IIED claim requires a plausible allegation of severe or extreme emotional distress.[3] See Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000); Hughes v. Pair, 209 P.3d 963, 976 (Cal. 2009). His complaint, however, offers nothing more than a bare allegation of "emotional harm and distress." J.A. 18. We find, once more, such detail insufficient to state his IIED claim as a matter of law.

### III.

We next consider whether Hare's remaining claims of forgery, aiding and abetting fraud, and civil conspiracy were in fact "barred by the doctrine of res judicata since they were resolved in litigation in the [Pennsylvania Orphans' Court]."

---

[3] Although Pennsylvania has not officially recognized the tort of IIED, it recognizes the "minimum elements necessary to sustain such a cause of action" as those set forth in Section 46 of the Restatement (Second) of Torts. Taylor, 754 A.2d at 652.

9

J.A. 138. It is unclear whether the district court was referring to "true res judicata," also known as claim preclusion, 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4402 (2d ed. 2015), or if it was referring to collateral estoppel, also known as issue preclusion. We consider both doctrines in turn, and determine neither precludes Hare's remaining claims against Simpson and Malone.

As Hare rightly points out, claim preclusion is no obstacle. Under Pennsylvania law,[4] claim preclusion dictates that "[a]ny final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995). Here, the parties in the instant case are different from those in the Pennsylvania litigation. As the record shows, Malone was not a party to the action in the Orphans' Court. Moreover, Hare's complaint names Simpson in her personal capacity, whereas she appeared before the Orphans' Court as "Power of Attorney of the Estate." See J.A. 52-53. As an estate representative, Simpson

---

[4] We "are bound under the Full Faith and Credit statute, 28 U.S.C. § 1738, to apply the law of the rendering state to determine whether and to what extent the state court judgment should have preclusive effect in the federal action." Davenport v. N.C. Dep't of Transp., 3 F.3d 89, 92 (4th Cir. 1993).

10

was not in privity with herself in her personal capacity. See Blum v. Goldman, 79 A.2d 248, 251 (Pa. 1951) (finding claim preclusion "does not generally apply where a party appears in two proceedings in different capacities"); Sec. Trust Co. v. Feist, 5 A.2d 119, 122 (Pa. 1939). Given this lack of identity of the parties, the district court erred insofar as it relied on grounds of claim preclusion.[5]

Appellees similarly cannot prevail on grounds of issue preclusion.[6] As formulated by the Pennsylvania Supreme Court, issue preclusion applies where "1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; 2) the issue was actually litigated in the first action; and 3) a final judgment on the specific issue

---

[5] This lack of privity distinguishes our case from In re Lare's Estate, 257 A.2d 556 (Pa. 1969), which Appellees seek to rely on for the proposition that a judicial confirmation of an accounting "is res adjudicata as to all items contained therein as well as to all questions which could have been raised concerning such items." Id. at 563. There, the parties to the instant action and previous accounting were the same, thus fulfilling the requirements of the claim preclusion doctrine.

We further note that, if Lare applies in the issue preclusion context, it is only because the court explained that the alleged claim of impropriety "was before th[e] Court previously." Id. Even though it was not "[e]xplicitly discuss[ed]" in the court's opinion, id., the issue in question had been actually litigated, unlike the validity of the deed in our case. See infra.

[6] Appellees have asked us to affirm the district court's decision on the basis of issue preclusion with regard to Appellee Malone, but not Simpson. Appellees Br. at 9, 15.

in question was issued in the first action." Commonwealth. v. Holder, 805 A.2d 499, 502 (Pa. 2002). Regarding the second factor, "[a]n issue is actually litigated when it is properly raised, submitted for determination, and then actually determined." Id. at 502-03. Here, Appellees' counsel admitted at oral argument that the legitimacy of the power of attorney "was not litigated" in Pennsylvania. Oral Argument at 24:17. In light of this concession, we cannot affirm the district court's dismissal of the case on the basis of issue preclusion.

Even without Appellees' counsel's candor, we agree with Hare that the record before the district court did not support the conclusion that the issue was in fact litigated in the Orphans' Court. Although not a Rule 12(b) defense, we have permitted the assertion of res judicata in a motion to dismiss when the defense can be judged from the face of the complaint. See Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000). In this case, it is not the complaint that is the obstacle to evaluating a preclusion defense, but the scant information contained in the Pennsylvania judgment. In its one-page adjudication, the court wrote that an audit of the Hare Sr. estate was called, and objections "were filed and dismissed by the Court and the account was closed the same day." J.A. 52. The court continued: "Grayson L. Hare, Sr. executed a Power of Attorney in favor of Shirley J. Simpson July 26, 2002." J.A.

12

Such lack of detail is all the more reason why adjudication of this affirmative defense is ill-suited at this stage in the litigation. There is simply no indication about whether the court entertained any allegation that the power of attorney was forged or fraudulent.[7] Of course, after oral argument, we now know that the court did not.

Appellees' argument on brief, that we should nevertheless consider the power of attorney's validity as having been litigated because its legitimacy was "implicit" in the Orphans' Court's confirmation of Simpson's accounting, is further unavailing. See Holder, 805 A.2d at 502-03 (explaining that an issue is "actually litigated" when it is "properly raised, submitted for determination, and then actually determined"). Nor can Appellees rely on the idea that the Pennsylvania forum afforded Hare "a full and fair opportunity" to litigate the issue. The question is not whether Hare, generally speaking, could have raised his claim that the power of attorney was

---

[7] Appellees further contend that "[a]lthough the record does not disclose what issues were raised by Hare's objections, it does not really matter." Appellees Br. 20. For support, they cite to a Third Circuit decision where the court determined that a party could be deemed to have actually litigated an issue when a default judgment was entered against him as a sanction for bad-faith conduct in discovery. In re Docteroff, 133 F.3d 210, 215 (3d Cir. 1997). Without support for this same proposition in Pennsylvania law, not to mention inconclusive evidence of bad faith on the part of Hare, Appellees' argument in this regard also fails.

13

forged. This approach confuses claim preclusion and issue preclusion. R/S Fin. Corp. v. Kovalchick, 716 A.2d 1228, 1230 (Pa. 1998) (explaining that claim preclusion applies to claims that "could have been litigated during the first proceeding if they were part of the same cause of action"). When courts include as a criteria of issue preclusion that a litigant must have had a "full and fair opportunity" to litigate the issue, this inquiry presupposes the actual litigation requirement, and further asks whether there exist other reasons of fairness "permit[ting] defeat of an otherwise valid claim of preclusion."[8] Wright & Miller, supra, § 4423. In other words, Appellees cannot eschew the actual litigation requirement.

IV.

In so holding for Hare, we of course respect the animating principles behind both preclusion doctrines, including the need to protect against the burden of repetitious litigation and to promote judicial economy. See Kovalchick, 716 A.2d at 1230. But, as presented by the record before us, Appellees have conceded and/or failed to meet the necessary elements under

---

[8] These fairness concerns may arise in cases of nonmutual preclusion, where there is differing incentive to litigate vigorously in the first action, or where there are substantial differences in the procedures available in different actions. See generally Wright & Miller, supra, § 4423.

14

Pennsylvania law for either claim or issue preclusion. We therefore affirm the district court in part and reverse in part and remand the case for further proceedings consistent with this opinion.[9]

AFFIRMED IN PART,

REVERSED IN PART,

AND REMANDED

---

[9] Appellees also challenge for the first time on appeal whether Hare brings his claims beyond the applicable statute of limitations, an issue better addressed by the district court.