J-S26007-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LORI ANN TRESSLER | : | |
| | : | |
| Appellant | : | No. 873 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 31, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000011-2016

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                          FILED JULY 08, 2020

Lori Ann Tressler (Appellant) appeals from the judgment of sentence imposed after a jury convicted her of third-degree murder.[1]  Upon review, we affirm.

The trial court summarized the facts as follows:

On the evening of August 21, 2015, Raymond Dice was with [Appellant] and Robert Engle [(Engle)].  They were drinking on Mr. Dice's porch when they got bored and wanted to go out.  First, they went to a bar called Johnny's[,] where they had a few beers.  Next, they went to Forty & Eight, a club in Smithfield, Pennsylvania.

At Forty & Eight, Armando Friend [(Friend)] joined their group.  [] Friend is [Appellant's] cousin.  The four of them then went back to Johnny's Bar, where they stayed until closing time.  They then went back to Mr. Dice's house, where they continued

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] See 18 Pa.C.S.A. § 2502(c).

drinking. By then, it was early in the morning on August 22, 2015. There was an argument between [Appellant] and [] Engle concerning a radio missing its fuse. [] Engle told [Appellant] that her son was the one who messed with it, and [] Engle was going to talk to him when he got home.[FN] 1 [Appellant], [] Engle, and [] Friend then left Mr. Dice's house to go to [Appellant's] house.

> [FN] 1 Jeffrey Tressler is the son of [Appellant], but is not related to [] Engle.

Upon arrival at [Appellant's] house, [] Engle became upset because [Appellant's] son, Jeffrey Tressler, was parked in the wrong spot. [Appellant] and [] Friend got out of the car they were in. [] Engle also got out of the car but then got back into the driver's seat and began using that vehicle to try and push the other car out of its spot.

While this was going on, Jeffrey Tressler was having a bonfire at [Appellant's] house with his friends. Jeffrey Tressler and several of his friends who were there that night testified at [Appellant's] trial to corroborate the events.

After [] Engle tried moving the other car out of his parking spot, he got out of his car and, by some witnesses' accounts, he became abrasive towards Jeffrey Tressler and his friends. Jeffrey Tressler testified at trial that [] Engle was yelling at several people and that he got into a scuffle with his mother, [Appellant], at which time [] Engle threw [Appellant] to the ground. Jeffrey Tressler heard his mother say, "You're done Mother F'er." [N.T., 4/2/19,] at 230. [Appellant] then ran towards [her] house.

At that point, [] Friend was standing on the porch of [Appellant's] house. He saw [Appellant] go into her house. As she was going in, [] Friend heard her say, "I'm gonna stab the son of a bitch." [Id.] at 107. [] Friend saw [Appellant] come back out of the house with a knife in her hand, and he saw her chasing [] Engle down the road.

Jeffrey Tressler testified that he saw [Appellant] come out of the house and stand within a foot of [] Engle. "I saw her stab him in the chest with a knife. Hard enough that I heard her fist connect and make a smacking sound off of his chest." Id. at 231. Jeffrey Tressler and his friends were just finishing changing a tire on their vehicle at that point, and then they got in their car and took off.

Jeffrey Tressler also testified that he had previously seen [Appellant] stab [] Engle on multiple occasions in the past. When asked how many times, Jeffrey Tressler replied, "There's too many times to honestly count how many." Id. at 238. Jeffrey Tressler then recounted the latest incident he could remember, which happened in 2009 [(hereinafter "the 2009 stabbing")]:

> [M]y mom grabbed a knife and she stabbed [Engle] in the chest a couple different times. It might've all been in the chest, but she lunged towards him with a knife multiple times. The only one I remember seeing is the one plunged [into] his chest.

[N.T., 4/3/19,] at 6-7.

Prior to trial, Appellant filed a Motion in Limine seeking to exclude evidence of prior incidents of [Appellant] allegedly stabbing [] Engle with a knife. Specifically, Appellant sought to preclude evidence of the 2009 [stabbing]. By Order dated June 22, 2017, th[e trial] court granted Appellant's Motion in Limine in part as it pertained to precluding the Commonwealth from introducing evidence at trial regarding prior incidents of [Appellant] stabbing [] Engle.

However, on June 30, 2017, the Commonwealth filed an interlocutory appeal to the Pennsylvania Superior Court, stating that th[e trial] court's Order precluding evidence of the prior stabbings would substantially handicap the prosecution of its case. On May 15, 2018, the Superior Court reversed th[e trial] court's decision as it pertained to the introduction of evidence related to prior incidents of [Appellant] stabbing [] Engle. Commonwealth v. Tressler, [192 A.3d 249] (Pa. Super. … 2018) (unpublished memorandum) [(hereinafter "Tressler I")]. The Superior Court reasoned that the introduction of [Appellant's] prior bad acts could be introduced because the probative value of the evidence outweighed the risk of unfair prejudice to [Appellant]. Id. at [** 7-23].

On June 7, 2018, Appellant filed a petition for allowance of appeal to the Pennsylvania Supreme Court. On October 17, 2018, the Pennsylvania Supreme Court denied the petition . . . . [Commonwealth v. Tressler, 196 A.3d 128 (Pa. 2018).] The case was then remanded to th[e trial] court, at which point th[e]

court proceeded in accordance with the Pennsylvania Superior Court's decision.

Also at trial, Dr. Cyril Wecht testified regarding the autopsy of [] Engle. Dr. Wecht was admitted as an expert witness in the field of forensic pathology. Dr. Wecht described the stab wound to [] Engle. The autopsy showed that the stab wound went through [] Engle's chest wall and into his heart. This produced a substantial amount of blood, which caused [] Engle's death.

[Importantly to this appeal,] Dr. Wecht was asked by the Commonwealth to look at two different knives and to hypothetically opine on whether each one could have been used in the stabbing of [] Engle.[FN] 2 The Commonwealth first showed Dr. Wecht a knife that was found in a grassy area near where [] Engle was stabbed[,] and [it] was admitted into evidence at trial . . . . That knife had a black handle and a blood-stained blade[,] and was similar in appearance to other knives found in the kitchen sink of [Appellant's] house [(we will refer to this knife as "the kitchen knife")]. The Commonwealth asked Dr. Wecht whether [the kitchen] knife could have been used to cause the injuries to [] Engle.[2] Dr. Wecht replied that it could have been used, although he could not identify whether it was the knife that was actually used.

> [FN] 2 Appellant's theory of defense at trial was not that [Appellant] stabbed [] Engle in self-defense or in the heat of passion, but rather that one of Jeffrey Tressler's friends [who was at Appellant's house on the day of the stabbing], Roger Angelo [(Angelo)], stabbed [] Engle. Two knives were therefore collected into evidence in this case.

The Commonwealth next showed Dr. Wecht a second knife, which was a [large,] silver[] metal survival knife and was admittedly owned by [] Angelo [(we will refer to this knife as "Angelo's survival knife")]. [Angelo's survival] knife was admitted into evidence at trial by stipulation of both parties . . . . The Commonwealth asked [Dr. Wecht] whether that knife could have been used to cause the injuries to [] Engle. Dr. Wecht replied that he did not believe [that Angelo's survival] knife could have been

---

2 Appellant's counsel objected to this line of questioning; the trial court overruled the objection. N.T., 4/2/19, at 62-64.

used to cause the injuries because that knife would have fractured two ribs, produced a larger stab wound, and left a pattern of serration on the wound. Dr. Wecht testified that his conclusions were within a reasonable degree of medical certainty.

At the conclusion of the trial, the jury found [Appellant] guilty of third-degree murder. On May 31, 2019, [Appellant] was sentenced to 20-40 years of incarceration.

Trial Court Opinion, 10/21/19, at 1-5 (footnotes in original, some capitalization omitted). Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant presents two issues for our review:

1. WHETHER THE TRIAL COURT ERRED IN PERMITTING THE COMMONWEALTH TO ELICIT TESTIMONY FROM ITS EXPERT[,] MR. WECHT[,] THAT EXCEEDED THE SCOPE OF THE EXPERT'S REPORT[?]

2. WHETHER THE TRIAL COURT ERRED IN PERMITTING THE COMMONWEALTH TO PRESENT TESTIMONY FROM APPELLANT'S SON REGARDING PRIOR BAD ACTS OF APPELLANT[?]

Appellant's Brief at 4.

Appellant first argues that the trial court erred in permitting the Commonwealth to elicit testimony from Dr. Wecht that exceeded the scope of his expert report, and prejudiced the defense. See id. at 8-11.

Our standard of review is well settled. The admissibility of evidence is within the sound discretion of the trial court, and we will not reverse absent an abuse of discretion. Commonwealth v. Leap, 222 A.3d 386, 390 (Pa. Super. 2019); see also Whitaker v. Frankford Hosp., 984 A.2d 512, 522

(Pa. Super. 2009) (stating that a trial court's admission of expert testimony will not be disturbed absent a manifest abuse of discretion).

Expert testimony is admissible when it "involves explanations and inferences not within the range of ordinary training[,] knowledge, intelligence and experience." Commonwealth v. Walker, 92 A.3d 766, 788 (Pa. 2014) (citation omitted).[3]  It is well established that an expert may respond to a hypothetical with an opinion, so long as the facts assumed in the hypothetical are supported by competent evidence.  Commonwealth v. Galvin, 985 A.2d 783, 801 (Pa. 2009).

We have further explained:

> [an] expert's testimony on direct examination is to be limited to the fair scope of the expert's pre-trial report.  In applying the fair scope rule, we focus on the word "fair."  Departure from the expert's report becomes a concern if the trial testimony would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the response.  Therefore, the opposing party must be prejudiced as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error.

Whitaker, 984 A.2d at 522 (citation omitted).

Here, Appellant contends that Dr. Wecht's testimony exceeded the scope of his report, where he testified to whether the stab wound that caused

_____

[3] The admissibility of expert testimony is generally governed by Pennsylvania Rule of Evidence 702.  Additionally, Pa.R.E. 703 provides that an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

Engle's death could have hypothetically been caused by the kitchen knife and/or Angelo's survival knife.[4] See Appellant's Brief at 10 (arguing that "Dr. Wecht never saw the kni[ves] prior to trial, and the autopsy was devoid of any information concerning the instrumentality that caused the wound in question."). According to Appellant, Dr. Wecht's knife testimony significantly prejudiced the defense. See id. at 10-11 (pointing out that Appellant's theory of defense was that Angelo stabbed Engle with Angelo's survival knife, and Angelo allegedly disposed of a bloodied t-shirt after the stabbing to avoid being considered as a suspect in the murder).

There is no merit to Appellant's claim. Though Dr. Wecht testified, in response to the hypothetical question, that the kitchen knife could have been the instrument that killed Engle, he expressly stated that he could not be sure that this was the case. N.T., 4/2/19, at 65-66. Moreover, the facts assumed in the hypothetical are supported by competent evidence of record, including Dr. Wecht's expert report, where he detailed the nature, depth and size of the stab wound. See Galvin, supra; see also N.T., 4/2/19, at 68 (Dr. Wecht testifying that Angelo's large survival knife would have produced a much larger stab wound, and inflicted more damage, than the wound that Engle actually sustained); cf. Commonwealth v. Petrovich, 648 A.2d 771, 772 (Pa. 1994) (stating that an expert may not base an opinion on "conjecture or

_____

[4] We will refer to this testimony as "Dr. Wecht's knife testimony."

guesswork."). Dr. Wecht's knife testimony in response to the hypothetical question was not improper, and Appellant's claim that this testimony exceeded the fair scope of his report is misplaced and unavailing. Accordingly, the trial court did not abuse its discretion in admitting Dr. Wecht's knife testimony over Appellant's objection.

However, even if the trial court erred in admitting Dr. Wecht's knife testimony, such error was harmless. "The harmless error doctrine . . . reflects the reality that the accused is entitled to a fair trial, not a perfect trial. . . . Harmless error exists[, in relevant part,] if the record demonstrates [that] . . . the error did not prejudice the defendant or the prejudice was de minimis . . . ." Commonwealth v. Hairston, 84 A.3d 657, 671 (Pa. 2014) (citations and quotation marks omitted). "An error may be deemed harmless . . . where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." Commonwealth v. Moore, 937 A.2d 1062, 1073 (Pa. 2007).

Here, even if Dr. Wecht's knife testimony prejudiced Appellant, such prejudice was de minimis where the uncontradicted evidence of Appellant's guilt was overwhelming. See id. Notably, Jeffrey Tressler, testified he:

> (1) Watched Engle push Appellant to the ground; this angered Appellant, who said "You're done Mother F'er[,]" N.T., 4/2/19, at 230;
>
> (2) Saw Appellant retrieve a knife from her house and stab Engle in the chest, id. at 231; and

- 8 -

(3) Had previously seen Appellant stab Engle on multiple occasions. N.T., 4/3/19, at 5-10.[5]

Additionally, the Commonwealth presented the testimony of Jeffrey Tressler's friends, who (1) were present on the night of the stabbing and corroborated his testimony; and (2) stated that no person aside from Appellant stabbed Engle. See N.T., 4/2/19, at 144-47; N.T., 4/3/19, at 42-43, 66-73.

Finally, Friend testified:

(1) After Engle pushed Appellant to the ground, Appellant got up and rushed into her house, stating "I'm gonna stab the son of a bitch[,]" N.T., 4/2/19, at 106-07;

(2) Appellant came back out of the house holding a knife, id. at 107; and

(3) Appellant ran after Engle with the knife in her hand. Id.

It is well settled that "even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant." Commonwealth v. Crosley, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted). Further, the jury here ostensibly credited the testimony of the Commonwealth witnesses; we may not disturb its credibility determinations, where, as here, they are supported by the record. See Commonwealth v. Scott, 146 A.3d

---

[5] The trial court admitted into evidence a police photograph taken of Engle's body after the 2009 stabbing, which depicted stab wounds to his chest and arm. See N.T., 4/3/19, at 8-10. Jeffrey Tressler testified that he watched Appellant inflict those wounds. Id. at 8-9.

775, 778 (Pa. Super. 2016) (stating that an appellate court will not disturb the factfinder's credibility findings, which are supported by the evidence of record). Accordingly, Appellant's first issue entitles him to no relief.

In his second issue, Appellant argues that the trial court erred in permitting the Commonwealth to introduce prior bad act testimony from Jeffrey Tressler regarding Appellant's prior stabbings of Engle. See Appellant's Brief at 11-13.

Because this Court addressed this exact issue in Tressler I, supra, Appellant is collaterally estopped from raising it again. See Commonwealth v. Gant, 945 A.2d 228, 229 (Pa. Super. 2008) (stating that collateral estoppel, or "issue preclusion," applies where (1) the issue decided in the prior adjudication is identical to the issue presented later; (2) the party against whom estoppel is asserted is a party to the prior adjudication; and (3) the party against whom estoppel is asserted had a fair and full opportunity to litigate the issue in the prior action); see also Commonwealth v. Holder, 805 A.2d 499, 503 (Pa. 2002) (stating that for "collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2020