J-A22026-18

2019 PA Super 73

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TROY T. BROCKINGTON-WINCHESTER | : | No. 3147 EDA 2017 |
| | : | |

Appeal from the Order Entered August 14, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002546-2016

BEFORE:  BENDER, P.J.E., NICHOLS, J., and STEVENS, P.J.E.[*]

OPINION BY NICHOLS, J.:                          Filed:  March 8, 2019

The Commonwealth appeals from the order granting Appellee Troy T. Brockington-Winchester's motion to dismiss, which he filed after a jury acquitted him of robbery, theft by unlawful taking or disposition, and terroristic threats but could not reach a verdict on trafficking in individuals and attempted involuntary servitude.[1]  The Commonwealth asserts the doctrine of collateral estoppel does not bar retrial of the offenses that resulted in a hung jury, because the jury did not conclusively determine any issues pertaining to those offenses.  We reverse and remand for further proceedings.

The trial court set forth the relevant facts of this appeal as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 3921(a), 2706(a)(1), 3011(a)(1), 901(a), and 3012(b)(5), respectively.

The charges stem from an incident which occurred on January 29, 2016 when [Appellee] contacted the victim . . . via a website entitled "www.backpage.com." The victim offered herself for sexual services through an advertisement on this website. [Appellee] contacted the victim through text messages to set up an appointment. When [Appellee] arrived at the victim's apartment, he was let inside. The victim was wearing a robe when she answered the door. Then according to [the victim's] testimony: "I went to take my robe off and I turned around, he had the gun out, pointed to my face." She testified that [Appellee] threatened her with a weapon, zip-tied her, and took $2,700 from her. The victim alleged that [Appellee] told her she could have her money back "if I worked for him." [Appellee] left, telling the victim he would return by 11:30 p.m. the same evening. The victim freed herself and called police. When [Appellee] returned as promised, he was promptly arrested. Upon [Appellee's] arrest, zip ties were found in his car matching those allegedly used to restrain the victim.

[Appellee] testified on his own behalf during trial. He testified that he and the victim had a prior relationship. He asserted that his communications with her after finding her on the website were an effort to confirm his own suspicion that the victim was prostituting herself. He testified that he called her a "whore," which angered her. He denied binding the victim's hands, robbing her, or telling her he would "pimp" her out. [Appellee] testified that the zip ties in his car were related to his construction work. [Appellee] worked rehabbing houses and used zip ties to secure pipes and electrical wires. According to [Appellee's] testimony, he never took the victim's money and the police did not find her money on his person or in his car. [Appellee] contends that the victim's motive was revenge for his revealing her profession.

Trial Ct. Op., 2/14/18, at 1-2 (record citations omitted).

On May 25, 2016, the Commonwealth filed a criminal information, charging Appellee with robbery, theft by unlawful taking or disposition, terroristic threats, trafficking in individuals, and attempted involuntary servitude. Following trial, the jury found Appellee not guilty of robbery, theft

by unlawful taking, and terroristic threats. The jury could not reach a verdict on trafficking in individuals and attempted involuntary servitude.

On June 5, 2017, Appellee filed a motion for dismissal, asserting that the Commonwealth intended to retry him on the charges of trafficking in individuals and attempted involuntary servitude. Appellee argued that the trial court should apply the doctrine of collateral estoppel and dismiss the remaining charges. The trial court conducted a hearing on June 26, 2017. On August 14, 2017, the court issued findings of fact, conclusions of law, and an order granting Appellee's dismissal motion.

The Commonwealth timely filed a notice of appeal and a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive Pa.R.A.P. 1925(a) opinion, maintaining that collateral estoppel barred a retrial. The court reasoned:

> For the Commonwealth to proceed upon the "Trafficking in Individuals" charge, there would need to be proof beyond a reasonable doubt that [Appellee] knowingly benefitted financially from any act that facilitates any activity described in paragraph § 3011(a)(1). *See* 18 Pa.C.S § 3011(a). However, the doctrine of collateral estoppel would preclude any such evidence from establishing this element. [Appellee] was acquitted of Robbery and Theft by Unlawful Taking and the facts established that he did not have the $2,700 that the victim claims was taken from her on his person or in his vehicle when he was arrested. Even if [Appellee] recruited, enticed, etc., the victim for involuntary servitude[,] he needed to knowingly benefit financially or receive anything of value from the involuntary servitude. Here, [Appellee] has been acquitted of Robbery and Theft by Unlawful Taking thus negating the necessary element in the Trafficking statute that he "knowingly benefits financially or receives anything of value from any act. . . ."

The same is true of the Involuntary Servitude statute, under the subsection that [Appellee] was charged, 18 Pa.C.S. § 3012(b)(5). This subsection requires "taking or retaining the individual's personal property or real property as a means of coercion." However, [Appellee] was acquitted of Theft by Unlawful Taking, which required that he unlawfully took, or exercised unlawful control over, movable property of another with the intent to deprive her thereof. Since [Appellee] was acquitted of the theft charge (taking unlawful control over the movable property of another) it follows *a fortiori* that he has been found not guilty of a necessary element of Involuntary Servitude (taking or retaining an individual's property).

In addition, for the Commonwealth to prove the "Involuntary Servitude" as charged, [Appellee] would have had to have been taking or retaining the victim's personal property as a means of coercion. However, the jury already found him not guilty of both Robbery and Theft by Unlawful Taking. The jury decided that [Appellee] did not take the victim's money. Thus, the Commonwealth should be collaterally estopped from proceeding on the charge of "Involuntary Servitude."

Trial Ct. Op. at 11-12.

On appeal, the Commonwealth raises the following question for our review: "Did the trial court commit legal error in finding that collateral estoppel precluded retrial of [Appellee] on the outstanding charges after a hung jury on the offenses?" Commonwealth's Brief at 5.[2]

The Commonwealth argues that "retrial of charges on which a jury has been unable to agree is not barred unless the jury made findings on one or more other charges which **must be interpreted as an acquittal** of the offense for which the defendant is to be retried." *Id.* at 18-19. (quoting **Commonwealth v. Jones**, 166 A.3d 349, 352 (Pa. Super. 2017) (emphasis

_____

[2] Appellee notified this Court that he would not file a brief.

in original)). The Commonwealth contends that "the mere fact that certain factual inferences may be drawn from [Appellee's] acquittals [for robbery, theft, and terroristic threats] does not transform such inferences into" specific factual findings regarding the evidence. *Id.* at 14.

The Commonwealth insists that the acquittals for robbery, theft, and terroristic threats do not preclude a retrial where another jury may find that the Commonwealth has proven each element of trafficking in individuals and attempted involuntary servitude. *Id.* at 15. "Whether [Appellee] robbed the victim, terrorized her, or intended to permanently deprive her of her property is not dispositive of the charges of human trafficking and criminal attempt to [commit] involuntary servitude . . . ." *Id.* The Commonwealth acknowledges that it might appear inconsistent if another jury finds Appellee guilty of the two offenses following a retrial, but "consistency in verdicts is not necessary." *Id.* at 17.

Application of the doctrine of collateral estoppel is a question of law. ***Commonwealth v. States***, 938 A.2d 1016, 1019 (Pa. 2007). "Accordingly, our standard of review is *de novo*, and our scope of review is plenary." *Id.* (citation omitted).

"Retrial after a hung jury normally does not violate the Double Jeopardy Clause." ***Jones***, 166 A.3d at 352 (citations omitted).

> The doctrine of collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy, which was made applicable to the states through the Fourteenth Amendment. The phrase "collateral estoppel," also known as "issue preclusion," simply means that when an issue of law,

evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Collateral estoppel does not automatically bar a subsequent prosecution, but rather, it bars redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding that has become a final judgment.

Traditionally, Pennsylvania courts have applied the collateral estoppel doctrine only if the following threshold requirements are met: 1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; 2) the issue was actually litigated in the first action; and 3) a final judgment on the specific issue in question was issued in the first action. An issue is actually litigated when it is properly raised, submitted for determination, and then actually determined. For collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect.

*Commonwealth v. Holder*, 805 A.2d 499, 502-03 (Pa. 2002) (plurality)

(citations, emphasis, and footnotes omitted).

In *States*, the Pennsylvania Supreme Court set forth additional

considerations for application of the collateral estoppel doctrine:

In the criminal law arena, the difficulty in applying collateral estoppel typically lies in deciding whether or to what extent an acquittal can be interpreted in a manner that affects future proceedings, that is, whether it reflects a definitive finding respecting a material element of the prosecution's subsequent case. We ask whether the fact-finder, in rendering an acquittal in a prior proceeding, could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. If the verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way. *See Commonwealth v. Zimmerman*, . . . 445 A.2d 92, 96 ([Pa.] 1981) (acquittal on simple assault precluded retrial on hung murder charges because simple assault was a constituent element of all grades of homicide in the case);

***Commonwealth v. Wallace***, . . . 602 A.2d 345, 349–50 ([Pa. Super.] 1992) (Commonwealth's concession that the jury's acquittal meant appellant did not possess a gun collaterally estopped Commonwealth from any subsequent prosecution based on appellant's possession of a gun); ***Commonwealth v. Klinger***, . . . 398 A.2d 1036, 1041 ([Pa. Super.] 1979) (appellant's acquittal on murder precluded the Commonwealth from bringing a subsequent perjury prosecution based on appellant's trial testimony that he did not kill the victim) . . . . Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes. ***See*** [***Commonwealth v.***] ***Buffington***, 828 A.2d [1024,] 1033 [(Pa. 2003)] (acquittal of rape and IDSI did not establish that Commonwealth failed to prove an essential element of sexual assault); [***Commonwealth v.***] ***Smith***, 540 A.2d [246,] 253–54 [(Pa. 1988)] (acquittal of gun possession charge did not collaterally estop Commonwealth from proceeding on charges of murder and possession of an instrument of crime, as acquittal could have been based on any number of reasons); ***Commonwealth v. Harris***, . . . 582 A.2d 1319, 1323 ([Pa. Super.] 1990) (robbery acquittal did not preclude retrial on hung charge of aggravated assault) . . . .

***States***, 938 A.2d at 1021-22 (some citations and quotation marks omitted).

Additionally, the Crimes Code defines the offense of trafficking in individuals as follows:

### § 3011. Trafficking in individuals

**(a) Offense defined.—**A person commits a felony of the second degree if the person:

(1) recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to involuntary servitude; **or**

(2) knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1).

18 Pa.C.S. § 3011(a)(1)-(2) (emphasis added).

The offense of involuntary servitude is defined as follows:

**§ 3012. Involuntary servitude**

**(a) Offense defined.—**A person commits a felony of the first degree if the person knowingly, through any of the means described in subsection (b), subjects an individual to labor servitude or sexual servitude, except where the conduct is permissible under Federal or State law other than this chapter.

**(b) Means of subjecting an individual to involuntary servitude.—**A person may subject an individual to involuntary servitude through any of the following means:

\* \* \*

(5) Taking or retaining the individual's personal property or real property as a means of coercion.

18 Pa.C.S. § 3012(a), (b)(5). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

Instantly, the trial court erroneously concluded that the offense charged under Section 3011 requires proof that Appellee knowingly benefitted financially from any act that facilitates any activity described in Section 3011(a)(1). While the court correctly identified language from Section 3011(a)**(2)**, it ignored the fact that Sections 3011(a)(1) and (2) are separated by the word "or." *See* 18 Pa.C.S. 3011(a)(1), (2). Further, the criminal information charged Appellee under Section 3011(a)**(1)** only. *See* Criminal Information, 5/25/16, at 1. Upon retrial, the Commonwealth need only prove that Appellee recruited, enticed, or solicited, among other things, the victim

with knowledge or reckless disregard for the fact that she would be subjected to involuntary servitude. *See* 18 Pa.C.S. § 3011(a)(1). Therefore, given this record, Appellee's acquittals for robbery and theft do not negate the elements necessary to prove a violation of Section 3011(a)(1). *See States*, 938 A.2d at 1022.

Likewise, the trial court noted that Section 3012(b)(5) requires "taking or retaining the individual's personal property . . . as a means of coercion," and Appellee's acquittal on the theft charge negated the Commonwealth's ability to prove this element. The court ignored the fact that the Commonwealth charged Appellee with **attempted** involuntary servitude. *See* Criminal Information, 5/25/16, at 1. Upon retrial, the Commonwealth need not prove that Appellee actually took or retained the victim's personal property as a means of coercion; rather, it must prove that Appellee, with the requisite intent, took a substantial step toward committing the offense of involuntary servitude. *See* Pa.C.S. § 901(a). The fact of Appellee's acquittal for theft does not preclude the possibility of a conviction for attempted involuntary servitude.[3] *See States*, 938 A.2d at 1022.

Based upon the foregoing, we cannot definitively interpret Appellee's acquittals for robbery, theft, and terroristic threats as resolving the issues in his favor with respect to the charges that resulted in a hung jury. *Id.* As

---

[3] Additionally, the fact of Appellee's acquittal for robbery (threatening immediate serious bodily injury) does not preclude the possibility that he committed some other act that constituted a substantial step toward the taking or retaining of the victim's property as a means of coercion.

such, collateral estoppel does not bar the Commonwealth from seeking a retrial for the offenses of trafficking in individuals and attempted involuntary servitude. *See Holder*, 805 A.2d at 502-03. Accordingly, we reverse and remand.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/19