J-S35011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHUN MAURICE AUSTION | : | |
| | : | |
| Appellant | : | No. 1167 EDA 2018 |

Appeal from the Order April 9, 2018
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000297-2015,
CP-52-CR-0000659-2016

BEFORE:   OLSON, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                      **FILED MARCH 13, 2020**

Appellant, Rashun Maurice Austion, appeals from the order entered on April 9, 2018.  On appeal, Appellant claims that the trial court erred in denying his motion filed pursuant to Pa.R.Crim.P. 587(B), which asserted double jeopardy as a bar to reprosecution of narcotics charges.  Upon careful consideration, we affirm.

We briefly discuss the facts of this case, as set forth in the affidavit of probable cause, as follows.  On May 8, 2015, police observed Appellant driving a rental car without activated headlights at approximately 2:00 a.m. in Greene Township, Pike County, Pennsylvania.  Police initiated a traffic stop of the vehicle.  Appellant was driving with a female passenger, later identified as Aleisha Robinson.  Police asked both occupants where they were going and they replied that they were traveling to a book convention in Pittsburgh,

_____
*   Retired Senior Judge assigned to the Superior Court.

J-S35011-19

Pennsylvania. Police detected the odor of marijuana and asked Appellant and Robinson about it. Robinson appeared nervous and her hands were visibly shaking. She admitted to police that she smoked marijuana in the vehicle earlier. When police asked Appellant the identity of the individual who rented the vehicle, Appellant responded that it was his cousin. However, without supporting rental documentation and upon detecting the odor of marijuana, police conducted a search of the vehicle. During a search of Robinson's purse, police recovered two Black & Mild cigars, two Palma cigars, one Blunt Ville cigar, one "Blunteffects" concentrated air freshener, and one glass pipe with suspected burnt marijuana residue. From the trunk, police recovered a black backpack containing three large plastic bags with suspected narcotics. In total, police recovered approximately 8,400 individual glassine envelopes that contained a substance later confirmed to be heroin. The recovered contraband had an approximate street value of $85,000.00.

The trial court summarized the procedural history of this case as follows:

At docket no. 297-2015, the Commonwealth charged [Appellant] with one (1) count each of possession with intent to manufacture or deliver a controlled substance [(PWID)], 35 P.S. § 780-113(a)(30), possession of a controlled substance, 35 P.S. §780-113(a)(16), possession of drug paraphernalia, 35 P.S. § 780-113(a)(32), and period for requiring lighted lamps, 75 Pa.C.S.A. § 4302(a)(1).

The case at docket no. 297-2015 proceeded to a jury trial during the July 2016 criminal term of court. On July 20, 2016, the empaneled jury returned a verdict of not guilty on the possession of drug paraphernalia charge and was deadlocked on the [PWID] and possession of a controlled substance charges. On July 20, 2016, after [the] entry of the jury's verdict, [the trial court] found [Appellant] guilty of the [period for requiring lighted lamps]

- 2 -

summary offense.  [The trial court] declared a mistrial [as to PWID and simple possession] due to [] jury [] deadlock[].  The Commonwealth [gave] notice of its intention to retry [Appellant] on the deadlocked charges.

At docket no. 659-2016, on November 15, 2016, the Commonwealth filed an additional criminal charge against [Appellant] of criminal conspiracy to commit [PWID], 18 Pa.C.S.A. § 903(a)(1), 35 P.S.  780-113(a)(30).  The cases at docket nos. 297-2015 and 659-2016 [were] consolidated for trial purposes.  On September 5, 2017, [Appellant] filed [a] motion to dismiss pursuant to Pa.R.Crim.P. 587(B) at both dockets.  A hearing on [Appellant's] motion was held on February 2, 2018.

Trial Court Opinion, 3/23/2018, at 1-2 (superfluous capitalization and parentheticals omitted).

The trial court denied relief on Appellant's dismissal motion by order and opinion entered on March 23, 2018.  On April 9, 2018, upon Appellant's motion to clarify the March 23, 2018 order, the trial court entered an order finding that Appellant's motion for dismissal was not frivolous and certified the order as an immediately appealable collateral order under Pa.R.A.P. 313(b).  This timely appeal resulted.[1]

Appellant raises the following issue for our review:

_____

[1]   On April 19, 2018, Appellant filed a single notice of appeal listing both docket numbers.  We note that on June 1, 2018, our Supreme Court prospectively "required that when a single order resolves issues arising out on more than one lower court docket, separate notices of appeal must be filed." **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018).  However, because Appellant filed his notice of appeal before **Walker** was decided, it is inapplicable herein.  On April 20, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied timely on May 8, 2018.  On June 26, 2018, the trial court issued another opinion pursuant to Pa.R.A.P. 1925(a).

J-S35011-19

> Whether the trial court abused its discretion or erred as a matter of law in denying Appellant's motion to dismiss pursuant to Pa.R.Crim.P. 587(B) by violating Appellant's constitutional right against double jeopardy which is guaranteed both by the 14th and 5th Amendments to the federal constitution and by Article I, § 10 of Pennsylvania's constitution[?]

Appellant's Brief at 5 (cleaned up).

Appellant argues, as a matter of law, that his previous acquittal for possession of drug paraphernalia bars reprosecution for PWID and simple possession of a controlled substance. *Id.* at 8-13. Appellant claims that "[t]he drug paraphernalia in this case was glassine packets which contained the alleged controlled substance." *Id.* at 8. Appellant posits that "[i]n order to convict [him] of the two [deadlocked narcotics] possession charges[, PWID and possession of a controlled substance, as well as a new charge for conspiracy,] a new jury would have to find that [] Appellant possessed the glassine packets containing the alleged controlled substance." *Id.* Appellant argues that such a "finding would contradict the first jury's finding which acquitted [] Appellant of [p]ossession of [d]rug [p]araphernalia and would thereby violate Appellant's constitutional right against double jeopardy." *Id.*

Accordingly, Appellant posits:

> It would be illogical and impossible for a second jury to find that [] Appellant possessed the controlled substances without also finding that [] Appellant possessed drug paraphernalia [for which he was acquitted]. Such a conclusion is analogous to the following scenario. One [j]ury makes a determination that a person did not possess a glass containing water but a second [j]ury determines that the same person possessed the water but not the glass containing the water. Clearly, in this scenario, if you possess one you must possess both. Should a second jury find that [] Appellant possessed a controlled substance [stored inside] the

- 4 -

glassine packets it would contradict and overrule the factual findings of the first jury that already determined that [] Appellant was not in possession of drug paraphernalia which contained the controlled substance.

*Id.* at 12-13.

Our standard of review is as follows:

An appeal grounded in double jeopardy raises a question of constitutional law. This Court's scope of review in making a determination on a question of law is, as always, plenary.

As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

The prohibition against double jeopardy was designed to protect individuals from being tried or punished more than once for the same allegation or offense. The Fifth Amendment of the United States Constitution provides, in relevant part, that no person shall be subject for the same offence to be twice put in jeopardy of life or limb. Likewise, Article I, § 10 of the Pennsylvania Constitution provides that no person shall, for the same offense, be twice put in jeopardy of life or limb.

*Commonwealth v. Miller*, 198 A.3d 1187, 1191 (Pa. Super. 2018) (internal citations, quotations, and brackets omitted).

This Court previously determined:

Retrial after a hung jury normally does not violate the Double Jeopardy Clause.

The doctrine of collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy, which was made applicable to the states through the Fourteenth Amendment. The phrase "collateral estoppel," also known as "issue preclusion," simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Collateral estoppel does not automatically bar a subsequent prosecution, but rather, it bars redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding that has become a final judgment.

Traditionally, Pennsylvania courts have applied the collateral estoppel doctrine only if the following threshold requirements are met: 1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; 2) the issue was actually litigated in the first action; and 3) a final judgment on the specific issue in question was issued in the first action. An issue is actually litigated when it is properly raised, submitted for determination, and then actually determined. For collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect.

*Commonwealth v. Brockington-Winchester*, 205 A.3d 1279, 1283–1284 (Pa. Super. 2019).[2]

Our Supreme Court's decision in *Commonwealth v. States*, 938 A.3d 1016 (Pa. 2007), relied upon by both parties and the trial court, provides additional guidance. In that case, States and two other men were involved in a single car accident. States was the sole survivor of the crash. The Commonwealth charged him with two counts each of involuntary

---

[2] In this case, the threshold requirements for application of collateral estoppel appear to be met. The issues are sufficiently similar, possession was litigated in the first trial, and a final judgment was entered.

manslaughter, accidents involving death or personal injury while not properly licensed, homicide by vehicle, and homicide by vehicle while driving under the influence of alcohol. The parties agreed that the trial court judge would hear the accidents involving death while not properly licensed charge, after a jury decided the other criminal charges. The jury deadlocked on all the charges before it. Thereafter, the trial judge acquitted States of the accidents involving death charge because the trial court explicitly stated that it was not convinced beyond a reasonable doubt that States was the driver of the vehicle. The *States* Court ultimately determined that the principles of collateral estoppel operated to prevent the Commonwealth from proceeding with retrial on the charges upon which the jury deadlocked based upon double jeopardy. The *States* Court examined the three-part test, as set forth above, to determine whether collateral estoppel applied to limit further litigation. It stated:

> In the criminal law arena, the difficulty in applying collateral estoppel typically lies in deciding whether or to what extent an acquittal can be interpreted in a manner that affects future proceedings, that is, whether it "reflects a definitive finding respecting a material element of the prosecution's subsequent case." *Commonwealth v. Buffington*, 828 A.2d 1024, 1032 (Pa. 2003). We ask whether the fact-finder, in rendering an acquittal in a prior proceeding, "could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." [*Commonwealth v.*] *Smith*, 540 A.2d[, 246,] at 251 [(Pa. 1988)]. If the verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way. *See Commonwealth v. Zimmerman*, 445 A.2d 92, 96 (Pa. 1981) (acquittal on simple assault precluded retrial on

- 7 -

[deadlocked] murder charges because simple assault was a constituent element of all grades of homicide in the case); *Commonwealth v. Wallace*, 602 A.2d 345, 349–350 (Pa. Super. 1992) (Commonwealth's concession that the jury's acquittal meant appellant did not possess a gun collaterally estopped Commonwealth from any subsequent prosecution based on appellant's possession of a gun); *Commonwealth v. Klinger*, 398 A.2d 1036, 1041 (Pa. Super. 1979) (appellant's acquittal on murder precluded the Commonwealth from bringing a subsequent perjury prosecution based on appellant's trial testimony that he did not kill the victim), *aff'd. sub nom. Commonwealth v. Hude*, 425 A.2d 313 (Pa. 1980). Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes. *See* [*Commonwealth v.*] *Buffington*, 828 A.2d [1024, ]at 1033 [(Pa. 2003)](acquittal of rape and IDSI did not establish that Commonwealth failed to prove an essential element of sexual assault); *Smith*, 540 A.2d at 253–254 (acquittal of gun possession charge did not collaterally estop Commonwealth from proceeding on charges of murder and possession of an instrument of crime, as acquittal could have been based on any number of reasons); *Commonwealth v. Harris*, 582 A.2d 1319, 1323 (Pa. Super. 1990) (robbery acquittal did not preclude retrial on [deadlocked] charge of aggravated assault), *appeal denied*, 597 A.2d 1151 (Pa. 1991).

*Commonwealth v. States*, 938 A.2d 1016, 1021–1022 (Pa. 2007).

The *States* Court ultimately concluded:

There existed a final order definitively establishing that *States was not the driver of the car* and a scheduled retrial at which the Commonwealth planned to offer evidence to establish that *States was the driver of the car*. The fact that a retrial required the Commonwealth to present evidence on this issue, to urge a second jury to reach a result contrary to the result previously reached by another fact finder, […] converts it into a classic collateral estoppel matter.

*Id.* at 1026–1027 (emphasis in original). Accordingly, the *States* Court barred the Commonwealth from retrying States on the basis of collateral estoppel and double jeopardy.

- 8 -

We further note that **States** examined our Supreme Court's prior decision in **Smith**. The **Smith** decision provides additional guidance regarding whether an acquittal may or may not be definitively interpreted as resolving an issue in favor of the defendant with respect to unresolved or newly raised charges. Smith was charged originally with first-degree murder and possessing an instrument of crime, as well as firearms not to be carried without a license and carrying a firearm on public streets in Philadelphia. After a first trial, Smith was acquitted of the firearms violations, but the jury deadlocked on murder and possessing an instrument of crime. The Commonwealth issued notice of its intent to reprosecute and Smith appealed, raising double jeopardy and collateral estoppel. Our Supreme Court determined that Smith's acquittals on the charges of firearms violations did not bar the Commonwealth's subsequent prosecution for murder and possessing an instrument of crime. Our Supreme Court noted that the charged firearms offenses prohibited a defendant from carrying a firearm without a license or on public streets in Philadelphia, but the Commonwealth's failure to prove those crimes did not necessarily determine whether Appellant was in physical possession of a firearm. **See Smith**, 540 A.2d at 253-254. Stated differently, the **Smith** Court found that the Commonwealth failed to prove that Smith lacked a firearm license or was on public property when arrested. The jury, however, did not make a definitive ruling regarding possession of the firearm used in the shooting. Thus, the Commonwealth was

permitted to reprosecute Smith for murder and possessing an instrument of crime.

In determining the applicability of the principle of collateral estoppel, the **Smith** Court explained that a court must

> examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. In determining whether a rational jury could have grounded its verdict upon an issue other than that which is sought to be foreclosed [our Supreme Court has] cautioned that the inquiry must be set in a practical frame and viewed with any eye to all the circumstances.

**Smith**, 540 A.2d at 251 (internal citations and quotations omitted). Collateral estoppel "is a principle to be applied with realism and rationality, not with the hypertechnical and archaic approach of a 19th century pleading book."[3] **Id.** (internal citations and quotations omitted).

_____

[3] We briefly respond to the dissent's suggestion that in applying "realism and rationality" to this case one cannot ignore "the plain and obvious fact that it would have been impossible for Appellant to have possessed the heroin inside the glassine packets if he did not possess the glassine packets." Dissenting Memorandum at 6. In contrast to the dissent's view, we read the phrase "realism and rationality" (when used as a legal test to gage the preclusive scope of a prior acquittal) with reference to the facts of the **Smith** case, from which the phrase emerged as set forth at length above. The principal that emerges from **Smith** is that, in the absence of a definitive ruling negating possession of a firearm, the concept of collateral estoppel did not preclude a subsequent prosecution for murder and possessing an instrument of crime. Whatever may be said about the logical relationship between the contents and their container in this matter, there is no legal requirement to prove possession of a container in order to prove unlawful possession of its contents. In other words, as in **Smith**, where acquittal of certain firearms charges did

In this case, the trial court denied Appellant relief on his double jeopardy claim for the following reasons:

Here, [] Appellant, relying on the principles in ***States***, ***supra***, presents an argument implicating double jeopardy, asserting that the Commonwealth can neither try him for the first time [for] [c]riminal [c]onspiracy [], nor re-try him on charges of [possession of a controlled substance] and [PWID], because the previous jury acquitted him of the charge of [p]ossession of [d]rug [p]araphernalia []. In other words, Appellant claims he cannot be tried for possessing the substance contained within the paraphernalia because he has already been acquitted of possessing that same paraphernalia. [The trial court] disagreed with Appellant's position.

In ***States***, the fact finder explicitly determined that the Commonwealth failed to prove [States] was the driver of the vehicle in question, directly implicating a necessary element of the charge of [h]omicide by [v]ehicle. Since [subsequent prosecution of States could only succeed if the Commonwealth also established that States] was the driver, collateral estoppel precluded re-trial.

However, the facts of the present matter differ markedly from those in ***States***. Here, [] Appellant was pulled over for a motor vehicle code violation, a search ensued, and law enforcement discovered large quantities of heroin and various items of

_____

not preclude subsequent prosecution for possessing an instrument of crime and murder, an acquittal on the paraphernalia charges in this case is not a legal impediment to prosecution for unlawful possession of the contraband. ***States*** confirms this understanding of the operation of collateral estoppel in the context of double jeopardy. This decision is unlike ***States*** wherein the court definitively determined that States was not driving the car at the time of the accident to bar reprosecution of involuntary manslaughter, homicide by vehicle and driving under the influence of alcohol. Here, as discussed, the jury's acquittal of possession of paraphernalia cannot be read as a definitive finding, especially in light of deadlocking on the narcotics charges. Implementing realism and rationality to this case begs the converse question Appellant and the dissent pose -- if the jury definitively determined that Appellant did not possess the paraphernalia, then why did it not also definitively find that Appellant did not possess the narcotics found inside those glassine packets?

paraphernalia, including glassine packets, packaging materials, a glass pipe, and cigars. The jury in this matter found that [] Appellant did not possess [drug paraphernalia]. This finding was not specific in concluding that [] Appellant did not possess the heroin contained within the glassine packets. Further, unlike in *States*, possession of the glassine packets here is not an element of the charges to be re-tried.

Based on this analysis, [the trial court] found that Appellant's acquittal of [possession of drug paraphernalia] did not represent an ultimate fact (with regard to the charges to be re-tried) determined by a valid and final judgment, that the doctrine of double jeopardy did not preclude re-trial of the charges noted herein, and [] denied his [m]otion [to dismiss].

Trial Court Opinion, 6/26/2018, at 4-5.

Further, in an opinion accompanying the order denying Appellant's motion to dismiss, the trial court concluded:

Our appellate courts have also stated, with respect to claims of double jeopardy, that inconsistent verdicts are permissible in our Commonwealth. There may have been various reasons why the jury concluded that [Appellant] did not possess the items of paraphernalia herein, including the glassine packets, while deadlocking on the possession of controlled substance charges. […] The paraphernalia charge in this case also involved items unrelated to the heroin, including the pipe, cigars and packaging material.

Trial Court Order and Opinion, 3/23/2018, at *5 (unpaginated) (internal citations omitted).

For this latter proposition, the trial court relied upon *States*, as well as this Court's decision in *Commonwealth v. DeLong*, 879 A.2d 234 (Pa. Super. 2005). In *DeLong*,[4] a jury convicted DeLong of PWID and delivery of

---

[4] Appellant does not challenge the trial court's reliance upon *DeLong* on appeal.

- 12 -

narcotics, but acquitted him of simple possession. The convictions were set aside, however, due to jury misconduct. The Commonwealth sought to re-try DeLong for PWID and delivery. DeLong moved to dismiss, arguing that his acquittal for the lesser-included offense of simple possession barred a second prosecution of the greater inclusive offenses of PWID and delivery, even if the jury convicted him of those offenses at the first trial. The ***DeLong*** Court rejected this argument, finding:

> Consistency in verdicts in criminal cases is not necessary. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. The rule that inconsistent verdicts do not constitute reversible error applies even where the acquitted offense is a lesser included offense of the charge for which a defendant is found guilty.
>
> Read in this light, the jury's decision to acquit [DeLong] of the simple possession charge but convict on PWID and [d]elivery charges is understood as an act of lenity in a case where the evidence focused, in any event, predominantly on [DeLong's] act of delivery during a controlled buy of methamphetamine. The inconsistent verdict, therefore, does not imply error, mistake, or inability to agree as to the two greater inclusive offenses.
>
> Nor is there, therefore, a double jeopardy [or] estoppel [] problem with a second prosecution of the greater inclusive offenses in this case. Though conceptual and practical differences exist with each principle, they share the purpose of barring retrial for the same offense.

***Commonwealth v. DeLong***, 879 A.2d 234 at 238 (case citation omitted).

Finally, our Supreme Court has stated:

> Federal and Pennsylvania courts alike have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively

establish that the jury was not convinced of a defendant's guilt. Rather, it has been the understanding of federal courts as well as the courts of this Commonwealth that an acquittal may merely show lenity on the jury's behalf, or that the verdict may have been the result of compromise, or of a mistake on the part of the jury. Accordingly, the United States Supreme Court has instructed that courts may not make factual findings regarding jury acquittals[.]

***Commonwealth v. Moore***, 103 A.3d 1240, 1246 (Pa. 2014) (citations omitted).

Taking all of the foregoing together, we agree with the trial court's determinations. First, we cannot interpret Appellant's acquittal for drug paraphernalia as a specific factual finding by the jury. Appellant interprets the jury's acquittal of his paraphernalia charge as a finding that he was not in *possession* of paraphernalia. However, the jury may have grounded its decision[5] upon a finding that the Commonwealth failed to prove that the glassine packets were items of paraphernalia as statutorily defined.[6]

_____

[5] We note that we do not have a full record of the proceedings. The certified record only contains a transcript of Appellant's testimony from trial and a transcript of the hearing on Appellant's motion to dismiss. There are no additional trial transcripts for us to review. Thus, we were not able to discern what evidence was presented at Appellant's first trial or what instructions and/or legal definitions the trial court provided to the jury prior to its deliberations.

[6] Possession of paraphernalia is defined as:

The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or

Moreover, the acquittal may merely show lenity on the jury's behalf, or the result of compromise, or of a mistake on the part of the jury.[7]   Additionally,

_____

otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(32).

[7]   We note the following.  The Commonwealth filed a bill of criminal information against Appellant on June 29, 2015 alleging, at Count IV, that Appellant

use[d] or possess[ed] with intent to use, drug paraphernalia, to wit, **glassine packets**, **packaging material**, **a glass pipe and cigars**, items used for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance.

Bill of Criminal Information, 6/29/2015, at *2 (emphasis supplied).  The Commonwealth also advised Appellant that it intended to try him and Robinson together in a joint trial.  However, as Appellant notes, "[a]fter jury selection but before opening statements began, [] Robinson[,] Appellant's alleged co-defendant, pleaded guilty to possession of marijuana and paraphernalia which was found in her purse" and "the Commonwealth dismissed Count II of the [i]nformation which charged Appellant with [c]onspiracy to possess heroin with intent to deliver." Appellant's Brief at 11. The Commonwealth, however, did not amend the criminal information filed against Appellant with regard to the paraphernalia recovered.  As such, the Commonwealth, *via* Count IV of the information, continued to charge Appellant with possession of all the paraphernalia police recovered, *i.e.*, glassine packets, packaging material, a glass pipe and cigars. The verdict slip, which is contained in the certified record, listed individually each of the recovered items of paraphernalia (*i.e.*, glassine packets, packaging material, a glass pipe and cigars).  The verdict slip asked the jury that, if it found Appellant guilty of possessing paraphernalia, to identify which paraphernalia items it found Appellant to have possessed.  When the jury found Appellant not guilty of possessing paraphernalia, it obviously did not identify items of

- 15 -

J-S35011-19

here, the jury did not definitively determine whether Appellant was in possession of the recovered heroin. In a subsequent prosecution, the Commonwealth simply does not have to prove that Appellant was in possession of paraphernalia in order to prove that Appellant was in simple possession of heroin or that he possessed the drugs with the intent to deliver them.[8] Thus, collateral estoppel does not apply. Based upon our standard of review and the record before us, we discern no abuse of discretion or trial court error in denying Appellant relief on his double jeopardy claim.

---

paraphernalia on the verdict slip. Based on the foregoing, we conclude that the Commonwealth's single paraphernalia charge, despite the recovery of multiple items, was carelessly confusing, as some of the recovered items are used typically to facilitate personal consumption of marijuana (*i.e.*, pipe and cigars) while the glassine packets at issue are used specifically for packaging and storing narcotics. As such, we conclude the jury's acquittal on the paraphernalia charge certainly could have been the result of lenity, compromise, or mistake. A rational, but confused, jury could have grounded its verdict by focusing on the lack of evidence regarding the other items seized from Robinson's purse – the cigars and glass pipe – to conclude that Appellant was not in possession of any paraphernalia.

[8]  In a subsequent prosecution for simple possession and PWID, the Commonwealth could seek to prove the crimes without evidence of glassine packets and/or packaging materials. The intent to deliver may be inferred from the possession of a large quantity of a controlled substance, the defendant's behavior in the presence of police, and sums of cash found in possession of the defendant. ***See Commonwealth v. Roberts***, 133 A.3d 759, 768 (Pa. Super. 2016). Expert opinion testimony is also admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver. ***Id.***

- 16 -

Order affirmed.

Judge Stabile joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/20