J-A10024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             :         PENNSYLVANIA
                                             :
            v.                                :
                                             :
                                             :
TROY BROCKINGTON-WINCHESTER    :
                                             :
           Appellant                  :      No. 1633 EDA 2020

Appeal from the Judgment of Sentence Entered June 15, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002546-2016

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:            **FILED FEBRUARY 23, 2022**

Appellant, Troy Brockington-Winchester, appeals from the judgment of

sentence entered on June 15, 2020, in the Criminal Division of the Court of

Common Pleas of Delaware County following his bench trial conviction for

criminal attempt to commit involuntary servitude.[1]  We affirm.

This Court's prior, published decision summarized the relevant

background facts as follows.

> The charges [in this case] stem from an incident which occurred
> on January 29, 2016, when [Appellant] contacted the victim ... via
> a website entitled www.backpage.com.  The victim offered herself
> for sexual services through an advertisement on this website.
> [Appellant] contacted the victim through text messages to set up
> an appointment.  When [Appellant] arrived at the victim's
> apartment, he was let inside.  The victim was wearing a robe when

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a) and 3012(b)(5).

she answered the door. Then according to [the victim's] testimony: "I went to take my robe off and I turned around, he had the gun out, pointed to my face." She testified that [Appellee] threatened her with a weapon, zip-tied her, and took $ 2,700[.00] from her. The victim alleged that [Appellant] told her she could have her money back "if I worked for him." [Appellant] left, telling the victim he would return by 11:30 p.m. the same evening. The victim freed herself and called police. When [Appellee] returned as promised, he was promptly arrested. Upon [Appellant's] arrest, zip ties were found in his car matching those allegedly used to restrain the victim.

[Appellant] testified on his own behalf during [his first] trial. He testified that he and the victim had a prior relationship. He asserted that his communications with her after finding her on the website were an effort to confirm his own suspicion that the victim was prostituting herself. He testified that he called her a "whore," which angered her. He denied binding the victim's hands, robbing her, or telling her he would "pimp" her out. [Appellant] testified that the zip ties in his car were related to his construction work. [Appellant] worked rehabbing houses and used zip ties to secure pipes and electrical wires. According to [Appellant's] testimony, he never took the victim's money and the police did not find her money on his person or in his car. [Appellant] contends that the victim's motive was revenge for his revealing her profession.

On May 25, 2016, the Commonwealth[, based upon the foregoing facts,] filed a criminal information, charging [Appellant] with robbery, theft by unlawful taking or disposition, terroristic threats, trafficking in individuals [(trafficking)], and attempted involuntary servitude.[2] Following trial, the jury found [Appellant] not guilty of robbery, theft by unlawful taking, and terroristic threats. The jury could not reach a verdict [and deadlocked] on [trafficking] and attempted involuntary servitude. [Accordingly, the court declared a mistrial as to the latter offenses.]

On June 5, 2017, [Appellant] filed a motion for dismissal, asserting that the Commonwealth intended to retry him on the charges of [trafficking] and attempted involuntary servitude. [Appellant] argued that the trial court should apply the doctrine

___

[2] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3921(a), 2706(a)(1), 3011(a), and 901(a) and 3012(b)(5), respectively.

of collateral estoppel and dismiss the [deadlocked] charges. The trial court conducted a hearing on June 26, 2017. On August 14, 2017, the court issued findings of fact, conclusions of law, and an order granting Appellee's dismissal motion.

***Commonwealth v. Brockington-Winchester***, 205 A.3d 1279, 1281-1282

(Pa. Super. 2019) (internal and record citations omitted).

The Commonwealth appealed the order dismissing the charges of trafficking and attempted involuntary servitude. On appeal, this Court reversed the dismissal order and remanded both charges for further proceedings. Relevant herein, our prior decision concluded that, because the Commonwealth charged Appellant with **attempted** involuntary servitude, the Commonwealth did not need to prove that Appellant took or retained the victim's personal property as a means of coercion; instead, the Commonwealth needed only to prove that Appellant, with the intent to commit involuntary servitude, took a substantial step toward the commission of that offense. ***Brockington-Winchester***, 205 A.3d at 1285, *citing* 18 Pa.C.S.A. § 901(a).[3] We also said that Appellant's prior acquittals on the charges of theft

---

[3] The information charged Appellant with criminal attempt to commit involuntary servitude, in violation of 18 Pa.C.S.A. § 901(a) and 18 Pa.C.S.A. § 3012(a) and (b)(5). In relevant part, those offenses are defined as follows:

### § 3012. Involuntary servitude

(a) Offense defined.—A person commits a felony of the first degree if the person knowingly, through any of the means described in subsection (b), subjects an individual to labor servitude or sexual servitude, except where the conduct is permissible under Federal or State law other than this chapter.

*(Footnote Continued Next Page)*

and robbery did not preclude a conviction for attempted involuntary servitude based upon other acts that constituted a substantial step. ***See Brockington-Winchester***, 205 A.3d at 1286 (doctrine of collateral estoppel did not bar Commonwealth's pursuit of retrial on charges of trafficking and attempted involuntary servitude since Superior Court could not definitively interpret Appellant's acquittals for robbery, theft, and terroristic threats as resolving issues in his favor with respect to charges on which the jury deadlocked).

On remand, the trial court convened a bench trial that commenced on December 4, 2019. Thereafter, on December 6, 2019, the court acquitted Appellant of trafficking but found him guilty of attempted involuntary servitude. On June 15, 2020, the court sentenced Appellant to serve 40 to

---

(b) Means of subjecting an individual to involuntary servitude.—A person may subject an individual to involuntary servitude through any of the following means:

* * *

    (5) Taking or retaining the individual's personal property or real property as a means of coercion.

18 Pa.C.S.A. § 3012(a), (b)(5). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

100 months' incarceration, followed by seven years' consecutive probation.[4] On June 24, 2020, Appellant filed a post-sentence motion, claiming that his prior acquittals on charges of robbery, theft, and terroristic threats precluded his conviction for attempted involuntary servitude. Following a hearing, the trial court denied Appellant's motion on August 19, 2020. This appeal followed.[5]

> Appellant's brief raises the following questions for our review:
>
> [Did Appellant's prior acquittal on charges of robbery, theft, and terroristic threats preclude the trial court from considering the victim's testimony in finding sufficient evidence to convict Appellant of the offense of attempted involuntary servitude at a subsequent trial?]
>
> [Without the victim's testimony, was the trial court's guilty verdict on the offense of attempted involuntary servitude contrary to the weight of the evidence?]

Appellant's Brief at 4.

In his opening claim, Appellant asserts that his prior verdicts of acquittal on charges of robbery, theft, and terroristic threats necessarily entail implicit factual findings which are entitled to preclusive effect. Appellant explains that these preclusive effects, which he refers to as "evidentiary preclusion," barred the trial court from relying on testimony that the jury at his first trial

---

[4] Due to the nature of his conviction, Appellant was also compelled to register as a lifetime registrant under the Sexual Offenders Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10-9799.42.

[5] Appellant and the trial court have complied with Pa.R.A.P. 1925.

necessarily rejected. *See* Appellant's Brief at 16. Applying this concept of evidentiary preclusion in the present case, Appellant argues that his acquittal on charges of robbery, theft, and terroristic threats following his first trial served as a definitive factual rejection by the jury of every aspect of the victim's story. *See id.* Since the trial court could not rely on any aspect of the victim's testimony, and since no other evidence supported Appellant's conviction for attempted involuntary servitude, Appellant reasons that the evidence against him was legally insufficient, and that he must be discharged, since no evidence introduced at his second trial - other than that rejected by the jury at his first trial - supported his convictions.

Appellant advances a second, alternate claim challenging the weight of the evidence. Here, Appellant again maintains that nothing supports his guilty verdict on the charge of attempted involuntary servitude, assuming that the precluded evidence is set aside. As such, Appellant claims he is entitled to remand for a new trial. We address Appellant's claims in the order he presents them.

We begin our analysis with Appellant's sufficiency challenge, which we assess under the following principles.

> Whether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope of review is plenary. In conducting our inquiry, we examine whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, is sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for

- 6 -

that of the factfinder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the factfinder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the factfinder is free to believe all, part or none of the evidence. **For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.**

*Commonwealth v. Rojas-Rolan*, 256 A.3d 432, 436 (Pa. Super. 2021) (emphasis added) (internal citations and quotation marks omitted).

Although Appellant frames his opening claim as a sufficiency challenge, he devotes considerable (if not exclusive) attention to an analysis which asserts that the trial court erred in relying on the testimony of the victim, given the prior verdicts of acquittal on the charges of robbery, theft, and terroristic threats. Thus, Appellant's sufficiency challenge rests almost entirely on his contention that the victim's testimony could not be considered at the second trial because it was previously rejected **in total** by the jury at Appellant's first trial. Appellant's theory on appeal, then, is that the record lacks sufficient evidence to support his conviction for attempted involuntary servitude once all improperly admitted evidence is removed.

This is not a permissible line of attack in raising and litigating a sufficiency challenge under Pennsylvania law. Rather, under Pennsylvania law, it is well settled that, in conducting a sufficiency analysis, "[this Court] consider[s] **all** of the evidence actually admitted at trial and [will] not review a diminished record." *Commonwealth v. Koch*, 38 A.3d 996, 1001 (Pa.

Super. 2011) (emphasis added); *see also Commonwealth v. Smith*, 568 A.2d 600, 603 (Pa. 1989); *Commonwealth v. Dale*, 836 A.2d 150 (Pa. Super. 2003).

To establish that Appellant committed attempted involuntary servitude, the Commonwealth needed to prove, beyond a reasonable doubt, that Appellant, with the intent to commit involuntary servitude, took a substantial step toward the commission of that offense. *See* 18 Pa.C.S.A. § 901(a) (attempt); *see also* 18 Pa.C.S.A. § 3012(a) and (b)(5) (involuntary servitude by taking or retaining real or personal property as a means of coercion). Thus, within the context of his sufficiency challenge, it was Appellant's task to come forward with a claim explaining how or why the evidence in the **undiminished** trial record was insufficient to show that Appellant acted with the requisite intent or took a substantial step toward the commission of attempted involuntary servitude.[6] Since Appellant has not come forward with such a claim, we cannot undertake a sufficiency analysis and Appellant is not entitled to relief based on evidentiary insufficiency.

_____

[6] Appellant does not argue there was insufficient evidence to establish, beyond a reasonable doubt, that he – with the intent to commit involuntary servitude – took a substantial step toward the commission of that offense. Instead, giving preclusive effects to the jury's verdicts of acquittal, Appellant argues there is no proof that (and the trial court erred in considering evidence which suggested that): 1) he took the victim's property; 2) he pointed a gun at the victim and threatened to shoot her; 3) he robbed the victim; 4) he restrained the victim with zip ties to perpetrate a theft; and, 5) the victim's testimony was sufficient to show he committed these acts. *See* Appellant's Brief at 26.

Within the confines of a principle that bars reassessment of finally resolved matters,[7] we briefly address Appellant's claim that the trial court's

_____

[7] Appellant is correct that the doctrine of issue preclusion invites Pennsylvania courts to assess prior proceedings to ascertain the preclusive sweep of an initial fact-finder's verdict which is favorable to the defense. **See** Appellant's Brief at 20, *citing* **Commonwealth v. Hude**, 425 A.2d 313, 321 (Pa. 1980). But while the doctrine bars redetermination of issues of law, evidentiary fact, and ultimate facts that were necessarily decided between the parties at a prior trial, and which have become the subject of a final judgment, the doctrine does not automatically bar subsequent prosecution and, more importantly, is not understood as a bar to any particular form or type of evidence, including the testimony of a victim or witness, the Commonwealth may later introduce to establish an unresolved issue. **See id.** at 322 ("[Issue preclusion] seeks to prevent the re-litigation of a finally litigated issue in a subsequent proceeding between the same parties whether the same or different evidence is to be introduced."). Application of the doctrine of issue preclusion thus turns upon whether a second proceeding will involve re-litigation of a conclusively determined issue; it does not apply simply because the Commonwealth seeks to reintroduce previously proffered evidence to prove unresolved matters.

It is undisputed that the credibility of the victim's testimony was litigated by the parties and considered by the jury at Appellant's original trial. It is also undisputed that the credibility of the victim, for the limited purpose of establishing Appellant's criminal responsibility for robbery, theft, and terroristic threats, was necessarily and conclusively decided against the Commonwealth at the first trial, as evidenced by the jury's verdicts of acquittal on those offenses. Nevertheless, it is equally clear that, with regard to Appellant's criminal responsibility for attempted involuntary servitude (a separate offense with different material elements than the offenses of acquittal), the persuasive value of the victim's testimony remained unresolved at the conclusion of Appellant's first trial, as shown by the jury's deadlocked verdict on that offense. As to that charge, even a practical, rational, and realistic assessment of the original trial would show that re-litigation of a finally determined issue could not (and did not) occur at Appellant's second trial. Moreover, Appellant has not addressed the effect of the jury's impasse on our present inquiry, and he has not directed our attention to any authority that forecloses reintroduction by the Commonwealth of previously proffered evidence to prove matters left unresolved at the conclusion of earlier proceedings. As such, the doctrine of issue preclusion did not form an obstacle
*(Footnote Continued Next Page)*

reliance on evidence allegedly subject to preclusion produced a conviction that "violate[ed] the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States, the Double Jeopardy Clause of Article I, Section 10 of the Constitution of Pennsylvania, and the double jeopardy provisions [of] 18 Pa.C.S.A. § 110(2) as espoused in **Commonwealth v. Hude**, 425 A.2d 313, 321 (Pa. 1980)." Appellant's Brief at 17. This claim emphasizes what the trial court could not consider, under a theory Appellant dubs as "evidentiary preclusion," which he describes as a distinct component of the doctrine of issue preclusion. **See** Appellant's Brief at 16.

Issue preclusion is a judicial doctrine that "seeks to prevent the re-litigation of a finally litigated issue in a subsequent proceeding between the same parties." **Hude**, 425 A.2d at 322. "Retrial after a hung jury normally does not violate the Double Jeopardy Clause." **Brockington-Winchester**, 205 A.3d at 1283, *quoting* **Commonwealth v. Jones**, 166 A.3d 349, 352 (Pa. Super. 2017). Moreover, as we reiterated in the prior appeal of this matter,

> [t]he doctrine of collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy, which was made applicable to the states through the Fourteenth Amendment. The phrase "collateral estoppel," also known as "issue preclusion," simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Collateral estoppel does

to the reintroduction of the victim's testimony to establish Appellant's criminal responsibility for attempted involuntary servitude.

not automatically bar a subsequent prosecution, but rather, it bars redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding that has become a final judgment.

Traditionally, Pennsylvania courts have applied the collateral estoppel doctrine only if the following threshold requirements are met: 1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; 2) the issue was actually litigated in the first action; and 3) a final judgment on the specific issue in question was issued in the first action. An issue is actually litigated when it is properly raised, submitted for determination, and then actually determined. For collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect. [***Commonwealth v. Holder***, 805 A.2d 499, 502-503 (Pa. 2002) (plurality) (citations, emphasis, and footnotes omitted)].

In [***Commonwealth v. States***, 938 A.2d 1016 (Pa. 2007)], the Pennsylvania Supreme Court set forth additional considerations for application of the collateral estoppel doctrine:

In the criminal law arena, the difficulty in applying collateral estoppel typically lies in deciding whether or to what extent an acquittal can be interpreted in a manner that affects future proceedings, that is, whether it reflects a definitive finding respecting a material element of the prosecution's subsequent case. We ask whether the fact-finder, in rendering an acquittal in a prior proceeding, could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. If the verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way. ***See Commonwealth v. Zimmerman***, [445 A.2d 92, 96 (Pa. 1981)] (acquittal on simple assault precluded retrial on hung murder charges because simple assault was a constituent element of all grades of homicide in the case); ***Commonwealth v. Wallace***, [602 A.2d 345, 349–350 (Pa. Super. 1992)] (Commonwealth's concession that the jury's acquittal meant appellant did not possess a gun collaterally estopped Commonwealth from any

- 11 -

> subsequent prosecution based on appellant's possession of a gun); ***Commonwealth v. Klinger***, [398 A.2d 1036, 1041 (Pa. Super. 1979)] (appellant's acquittal on murder precluded the Commonwealth from bringing a subsequent perjury prosecution based on appellant's trial testimony that he did not kill the victim) .... Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes. [***See Commonwealth v. Buffington***, 828 A.2d 1024, 1033 (Pa. 2003)] (acquittal of rape and IDSI did not establish that Commonwealth failed to prove an essential element of sexual assault); [***Commonwealth v. Smith***, 540 A.2d 246, 253–254 (Pa. 1988)] (acquittal of gun possession charge did not collaterally estop Commonwealth from proceeding on charges of murder and possession of an instrument of crime, as acquittal could have been based on any number of reasons); [***Commonwealth v. Harris***, 582 A.2d 1319, 1323 (Pa. Super. 1990)] (robbery acquittal did not preclude retrial on hung charge of aggravated assault)[.]

***Brockington-Winchester***, 205 A.3d at 1283 (some citations and quotation marks omitted), *quoting* ***States***, 938 A.2d at 1021-1022.

Appellant claims that the credibility of the victim's testimony at his first trial was the only reasonable basis for the jury's verdict and that issue was necessarily decided in his favor, as shown by the acquittals for robbery, theft, and terroristic threats. Because the jury rejected the victim's testimony ***in toto***, Appellant reasons, "the trial court could not, at retrial, accept a story the jury rejected." Appellant's Brief at 28. Appellant thus claims he is entitled to relief.

This position is unavailing. Appellant overlooks that, while a unanimous jury acquitted him on charges of robbery, theft, and terroristic threats (thereby negating the use of force, threats of force, and the actual taking of

the victim's property), none of those findings must be interpreted as a final, defense-favorable determination on the material elements of attempted involuntary servitude, since that offense does not require the use of force, the issuance of threats, or an actual taking of movable property. Put differently, a second fact-finder could find that, based upon the evidence offered by the Commonwealth (including the victim's testimony), some other act committed by Appellant, with the requisite intent, constituted a substantial step toward attempted involuntary servitude, just as several jurors did at Appellant's first trial. Since the jury at Appellant's first trial, in rendering its verdicts of acquittal on the charges of robbery, theft, and terroristic threats, could have grounded its determinations on issues other than the material elements of attempted involuntary servitude,[8] Appellant's prior acquittals were not entitled to preclusive effect, evidentiary or otherwise, at his second trial.

Appellant advances his weight of the evidence challenge on the same evidentiary exclusion theory explained above. As we have rejected this contention, we conclude that Appellant is not entitled to a new trial.

Judgment of sentence affirmed.

---

[8] In fact, this explanation of the verdict at Appellant's initial trial is suggested strongly by the jury's deadlock on attempted involuntary servitude.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/23/2022