J-A22008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GINO FRANK SCATENA | : | |
| | : | |
| Appellant | : | No. 1040 WDA 2022 |

Appeal from the Order Entered August 25, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000233-2022

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED:  November 22, 2023**

Gino Frank Scatena appeals from the order denying his motion to dismiss pursuant to Pa.R.Crim.P. 578.  We affirm.

The trial court set forth the history of this matter as follows:

> On July 7, 2021, Juliette Murcko filed for and obtained a Temporary Protection from Abuse ("TPFA") order against [Appellant] at FD No. 21-1151.  Ms. Murcko sought this TPFA Order following an incident that occurred on July 5, 2021, where it was alleged that [Appellant] threw and damaged Ms. Murcko's iPhone after repeatedly engaging in other stalking and harassing behavior following their breakup.

> Shortly after the issuance of the TPFA Order, an Indirect Criminal Contempt ("ICC") complaint was filed.  The ICC complaint was . . . filed to address the incident that was alleged to have occurred on July 22, 2021, where [Appellant] repeatedly drove past Ms. Murcko's place of business while revving the engine on his motorcycle to make his presence known.

> The ICC hearing was scheduled to take place on August 25, 2021 before Judge Eaton in the Family Division.  . . .

On August 25, 2021, [Appellant and Ms. Murcko] consented to the entry of a Final Protection from Abuse ("PFA") Order in lieu of a hearing. The order was intended to resolve the pending ICC complaint. The order stated that it was entered into "without admission of guilt by [Appellant] and to avoid cost and inconvenience of litigation." It was set to expire on August 24, 2022. An Addendum to this [PFA] Order, drafted by the parties' respective attorneys, further stated that "all incidents of contempt filed or occurring prior to this date are dismissed" and that it "shall not be considered a violation of this order if [Appellant] is driving on public roadways or traveling on public thoroughfares or sidewalks."

Trial Court Opinion, 11/9/22, at 3-4 (cleaned up). Notably, no representative from the Commonwealth was involved in the negotiation or execution of any portion of the PFA Order or Addendum.

On October 14, 2021, slightly less than two months after entry of the PFA Order, Ms. Murcko contacted police and informed them that Appellant drove his Ford Explorer repeatedly around the block where she operated her dentistry practice. Approximately a week later, on October 20, 2021, Ms. Murcko again notified law enforcement that Appellant rode his motorcycle in front of her business several times while revving his engine, and then parked at a bar across the street.

Appellant was consequently charged in the instant matter with one count each of stalking and criminal mischief, as well as two counts of harassment. Critically, the criminal information stated that the allegation of criminal mischief was said to have taken place on July 5, 2021, when Appellant broke Ms. Murcko's iPhone, prior to her obtaining the TPFA Order. The

allegations of stalking and harassment involved a course of conduct and purportedly occurred from July 5 through October 20, 2021.

Appellant filed an omnibus pretrial motion pursuant to Pa.R.Crim.P. 578, seeking dismissal of the criminal charges on multiple grounds, including double jeopardy. The trial court entertained argument from both Appellant and the Commonwealth. Several days later, the court denied Appellant's motion. This timely appeal followed.[1]

Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following issues for our review:

I.     Whether double jeopardy principles require dismissal of the pending criminal charges because those incidents of misconduct were previously subject to prosecution and dismissed in a consent order arising out of the criminal contempt proceedings?

II.    Whether the coordinate jurisdiction doctrine rule required the trial judge to follow the order issued by Judge Eaton dismissing the indirect criminal contempt action via consent order[?]

III.   Whether as a matter of public policy the parties are required to follow a negotiated resolution of indirect criminal contempt charges for a PFA, because in the alternative legal counsel would never resolve a PFA claim if criminal charges can be brought for that same conduct[?]

_____

[1] We observe that "[s]ince the trial court did not make a finding that Appellant's motion was frivolous, the interlocutory order was immediately appealable as a collateral order." **Commonwealth v. Goods**, 265 A.3d 662, 663 n.1 (Pa. Super. 2021).

- 3 -

Appellant's brief at 4 (cleaned up).[2]

In his first issue, Appellant raises two separate but related legal principles: double jeopardy and collateral estoppel. Regarding the former, we have stated that "[a]n appeal grounded in double jeopardy raises a question of constitutional law. This Court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*." **Commonwealth v. Miller**, 198 A.3d 1187, 1191 (Pa.Super. 2018) (cleaned up). In the same vein, application of collateral estoppel constitutes a question of law, with the same standard and scope of review. **See Commonwealth v. Brockington-Winchester**, 205 A.3d 1279, 1283 (Pa.Super. 2019).

When reviewing a court's denial to grant relief on double jeopardy grounds, we bear in mind the following legal principles:

> The Double Jeopardy Clause protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. Among its purposes are to preserve the finality and integrity of judgments and to deny to the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.
>
> Insofar as individual rights are concerned, the clause protects a defendant's interest in having his fate decided by his

---

[2] We note with displeasure that while Appellant lists three issues on appeal in his brief, the argument section of the brief is divided into six separate subsections, in violation of Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein"). Counsel is cautioned to abide by the Rules of Appellate Procedure in the future.

first jury. It is grounded on the concept that no person should be harassed by successive prosecutions for a single wrongful act and that no one should be punished more than once for the same offense.

***Commonwealth v. Johnson***, 231 A.3d 807, 819 (Pa. 2020) (cleaned up).

Concerning collateral estoppel, we have stated that the principle "is treated as a subpart of double jeopardy protection" and "does not automatically bar subsequent prosecutions[,] but does bar redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding which has become a final judgment." ***Commonwealth v. States***, 938 A.2d 1016, 1020 (Pa. 2007) (cleaned up). Our High Court has employed a three-part test "to determine if collateral estoppel applies to limit further litigation on a particular issue," engaging in the following inquiries:

1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;

2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and

3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

***Id***. (citation omitted).

With this background in mind, we turn to Appellant's issues. Appellant first argues that double jeopardy shields him from the instant criminal prosecution. In particular, he contends that the charges in question arose from

the same incidents that had been adjudicated by the PFA Order, such that he was being punished for the same conduct twice. *See* Appellant's brief at 10, 12-13. He purports that the charges for harassment and stalking contain the same elements as the behavior the PFA sought to prevent. *Id*. at 15-17. In tandem with his double jeopardy contention, Appellant posits that the Commonwealth should be collaterally estopped from charging him herein, since the charges have already been addressed and adjudicated in a prior legal proceeding. *Id*. at 18-21.

In rejecting this claim, the trial court addressed the merits of Appellant's arguments and determined that neither double jeopardy nor collateral estoppel applied to this case. *See* Trial Court Opinion, 11/9/22, at 12-15. The court also interpreted the language of the PFA Order itself, concluding that the underlying charges fall outside the scope of the PFA Order since it only governed "incidents of contempt," not criminal prosecutions. *Id*. at 10. For its part, the Commonwealth joined in these positions. *See* Commonwealth's brief at 10, 17. Additionally, it averred, without significant discussion in its brief, that Appellant and Ms. Murcko lacked the capacity to negotiate away the Commonwealth's right to prosecute criminal acts, and that Appellant failed to cite any authority permitting the same. *Id*. at 22-23.

Upon review, we find that the trial court did not err in denying Appellant's motion to dismiss. In reaching this conclusion, however, we deem it unnecessary to engage in a detailed discourse addressing double jeopardy, collateral estoppel, or contract interpretation. Rather, we first note that the

PFA Order was a consent order, which "is a contract which has been given judicial sanction, and, as such, it must be interpreted in accordance with the general principles governing the interpretation of all contracts." **Com. ex rel. Kane v. UPMC**, 129 A.3d 441, 463 (Pa. 2015) (citation omitted). Further, it is a well-established principle of law that "a contract cannot impose obligations upon one who is not a party to the contract." **ABG Promotions v. Parkway Pub., Inc.**, 834 A.2d 613, 618 (Pa.Super. 2003). Here, the record confirms that the Commonwealth was not involved in negotiating or preparing the PFA Order, and no representative from the Commonwealth executed it. Accordingly, as a matter of law, we find that the Commonwealth is not bound by the terms of the PFA Order, and therefore cannot be precluded from prosecuting Appellant for any criminal charges based on that agreement alone.

Even if either double jeopardy or collateral estoppel did apply to preclude the Commonwealth from prosecuting Appellant for the identical conduct giving rise to the ICC complaint,[3] we further find that Appellant would not be entitled to relief for two reasons. First, Appellant cannot demonstrate that jeopardy attached to the contempt charges that the PFA Order addressed. "It is undisputed that double jeopardy attache[s] to criminal contempt trials." **Commonwealth v. Wilson**, 227 A.3d 928, 936 (Pa.Super. 2020). However,

---

[3] **See**, **e.g.**, **Commonwealth v. Jackson**, 10 A.3d 341 (Pa. 2010) (concluding that double jeopardy prohibited the Commonwealth from trying a defendant for criminal trespass after a previous finding of criminal contempt based on the same conduct).

it does not attach "until a defendant stands before a tribunal where guilt or innocence will be determined." ***Commonwealth v. Martin***, 97 A.3d 363, 365 (Pa.Super. 2014). In a bench trial, particularly, jeopardy does not attach until the court begins to hear evidence. ***Id***.

With respect to the ICC complaint, no criminal contempt trial was conducted. Rather, Appellant and Ms. Murcko entered into the PFA Order to resolve both the TPFA and the contempt allegations without a trial. No evidence was presented, and similarly there was no finding that Appellant was in contempt. Indeed, the PFA Order specifically provided that it was entered into without any admission of guilt. As such, jeopardy never attached during the ICC action, and the Commonwealth would not be precluded from later criminal prosecution for that same conduct.

Second, collateral estoppel does not apply because it is clear the current charges were for matters that were neither within the scope of the PFA Order nor asserted in the prior ICC action. The incident triggering the ICC hearing occurred on July 22, 2021, where it was alleged that Appellant rode past Ms. Murcko's place of business on his motorcycle while revving his engine. However, the criminal information in this matter identified that the instant charges stemmed from events occurring on dates **other than** July 22, 2021. Both the stalking and harassment charges related to Appellant's conduct on July 5, 2021, when Appellant was alleged to have broken Ms. Murcko's iPhone, and October 20, 2021, when Ms. Murcko called police because Appellant was again revving his motorcycle outside of her place of business. The count for

criminal mischief related exclusively to matters before Ms. Murcko obtained the TPFA, and therefore could not additionally give rise to contempt of that subsequent TPFA. As such, neither doctrine prohibited prosecution of the crimes charged. Therefore, Appellant is not entitled to relief on these claims.[4]

In his next issue, Appellant argues that the trial court's refusal to dismiss the criminal charges constituted a violation of the coordinate jurisdiction rule, since it effectively overturned or relitigated the judicially-sanctioned PFA Order. *See* Appellant's brief at 24-27. We note that this doctrine "commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." ***Commonwealth v. Banks***, 198 A.3d 391, 398 n.8 (Pa.Super. 2018). The rule "falls within the ambit of the 'law of the case doctrine.'" ***Commonwealth v. King***, 999 A.2d 598, 600 (Pa.Super. 2010) (citation omitted). Thus, our standard of review is *de novo*. ***See Commonwealth v. Lancit***, 139 A.3d 204, 206 (Pa.Super. 2016) (cleaned up).

_____

[4] Included within his first issue, Appellant also contended that any alleged criminal conduct occurring **after** the PFA Order's execution should have been dismissed based on the language stating that it "shall not be considered a violation of this order if [Appellant] is driving on public roadways or traveling on public thoroughfares or sidewalks." Appellant's brief at 17. He asserted that because the charges for harassment or stalking stemmed in part from incidents in October of 2021, wherein Appellant drove his vehicle near Ms. Murcko's place of employment, he cannot be charged for that conduct, per the PFA Order. Since we find that the terms of the PFA Order do not bind the Commonwealth, *supra*, we are not persuaded by this argument.

After a review of the certified record, we readily conclude that the facts of this case did not implicate application of the coordinate jurisdiction rule because this action did not involve a transfer of a matter between judges of coordinate jurisdiction. Rather, it involved two separate cases, between different sets of parties, with the trial court here interpreting the PFA Order entered in the prior action solely for purposes of addressing Appellant's unmeritorious double jeopardy and collateral estoppel claims. As such, the procedural posture of this case removed it from the purview of the law of the case doctrine, and, in turn, the coordinate jurisdiction rule.

Moreover, even if the doctrine applied, it would not have been violated by the trial court's decision to deny Appellant's motion to dismiss. As discussed above, the PFA Order cannot bind the Commonwealth and does not preclude it from prosecuting Appellant for the underlying acts. It simply had no bearing on the instant prosecution. In other words, the decision to allow the Commonwealth to proceed in this case did not "alter resolution of a legal question" determined by the judge in the ICC action. ***Banks***, ***supra*** at 398 n.8. This claim is therefore without merit.

Appellant's final issue concerns the notions of public policy. ***See*** Appellant's brief at 28-30. He cites case law for the proposition that settlement agreements are favored in the law. ***Id***. at 28. Appellant laments that if the PFA Order is not given full faith and credit, this subverts the expectations of the parties, who believed that their agreement resolved all claims and precluded additional criminal proceedings. ***Id***. at 28-29. He

believes that the court's decision is inconsistent with the public policy that a resolution agreed upon by the parties should "bring closure to the dispute." *Id*. at 30.

As to this contention, the trial court determined that public policy is perverted when "a defendant seeks to use as a shield a PFA Order that he himself is not in compliance with." Trial Court Opinion, 11/9/22, at 15. It also stated that "the more problematic public policy concern would be if a victim of abuse was prohibited from seeking further recourse following a sincere attempt to amicably resolve PFA issues when the defendant continued to engage in threatening behavior following a consent decree." *Id*. In its brief, the Commonwealth contends that there is no violation of public policy since, as we determined above, the terms of the PFA Order did not preclude criminal prosecution. *See* Commonwealth's brief at 27-28.

We find that Appellant has not demonstrated that the trial court's decision violated public policy. For the reasons already discussed above, the PFA Order could not restrict the Commonwealth, a non-party, from prosecuting "all incidents of contempt," let alone criminal conduct, as Appellant purports. This is not a circumstance where the Commonwealth agreed to refrain from prosecuting an act and then reneged on that agreement to Appellant's detriment. *Cf*. *Commonwealth v. Cosby*, 252 A.3d 1092, 1131 (Pa. 2021) (holding that "when a prosecutor makes an unconditional promise of non-prosecution, and when the defendant relies upon that guarantee to the detriment of his constitutional right not to testify, the

principle of fundamental fairness that undergirds due process of law in our criminal justice system demands that the promise be enforced").

As discussed above, in refusing to grant Appellant's motion to dismiss criminal charges, the trial court did not circumnavigate the PFA Order or any other private arrangement as it related to Appellant and Ms. Murcko. Appellant's public policy argument simply rests on a factual premise that we reject.

In sum, since none of Appellant's issues on appeal warrants relief, we have no cause to reverse the order denying his motion to dismiss.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/22/2023